# Wilson *against* Altemus.

The decision of the Board of Property upon a *caveat* to a return of survey, is conclusive of the rights of the parties, unless he, against whom the decision is made, institutes an action of ejectment for the land, within six months; and this, whether he be in or out of possession.

To avoid the absolute bar of such decision by the Board of Property, it is not sufficient that an action of ejectment was instituted within six months by the party, in whose favour the decision was made, against a third person, to which the losing party caused himself to be made a co-defendant.

And if an ejectment, under such circumstances, be brought within the six months, it must be duly prosecuted; and if the plaintiff suffer twenty years to elapse without an effort to get the cause tried, it will be presumed that he has abandoned his action, and a patent may issue to the other party.

ERROR to the Common Pleas of *Indiana* county.

This was an action of ejectment by Joseph Wilson against William Altemus, for 193 acres of land.

The plaintiff gave in evidence that there was an actual settlement made upon the land by Thomas Pettigrew in 1805; a transfer of it by Pettigrew to John Wakefield, in 1809, to whom a

[Wilson v. Altemus.]

warrant was granted in 1816; a survey made in 1817. Deed from Wakefield to the plaintiff in 1829, to whom a patent was granted 20th of April 1838.

The defendant, to support his title, gave in evidence a warrant to Adam Altemus, of the 26th of September 1816, calling for interest from the 1st of March 1806; a survey made and returned 7th of October 1816, of 208 acres; the record of a *caveat* entered to the acceptance of this survey by John Wakefield, the proceedings of the board thereupon, and on hearing the parties a decision in favour of Adam Altemus, on the 14th of February 1817; a patent to Adam Altemus on the 16th of January 1838.

To rebut the effect of this decision of the Board of Property, the plaintiff offered in evidence the records of two ejectments brought within six months after the date of the decision. The first was to June Term 1817, by Adam Altemus against John Altemus, in which, on the 27th of October 1818, John Wakefield was admitted as co-defendant. This cause was tried at June Term 1819, and a verdict and judgment rendered for the defendants. Another ejectment was brought to September Term 1817, by Wakefield against John Altemus, which was put at issue, and was on the list for trial in 1818 and 1819; since which no step was taken in it by either party. The plaintiff proved by John Altemus, that he (the witness) had taken possession of the land in 1814, as tenant of Adam Altemus; and in consequence of a dispute between them in 1815, he refused to give up the possession to Adam, denying his right. The latter attempted to gain possession by a proceeding as landlord against his tenant, but was defeated, owing to some defect in the notice. John continued in possession till after the verdict for Wakefield in 1819, when he took a lease from Wakefield, who held the possession till 1840, when he was ejected by a recovery against him by Adam Altemus, under whom the present defendant claims. With the foregoing, the plaintiff also offered the testimony of D. Stanard, Esq., the counsel, that he was employed by Adam Altemus, in the suit against John. He was also counsel in the suit brought by Wakefield against John Altemus, but could not say who employed him.

To all this evidence, the defendant objected on the ground that it was, if true, wholly immaterial.

The court below (White, President) was of this opinion, and rejected the evidence. Verdict and judgment for defendant.

*Banks* and *Foster*, for plaintiff in error, argued that it was a fair presumption that Wakefield became a party to the ejectment, which was brought within six months, for the purpose of trying the title, by an agreement with Adam Altemus; for the fact of his becoming a co-defendant in that ejectment by the landlord against his tenant, could not be accounted for upon any other ground.

[Wilson v. Altemus.]

By these ejectments the terms of the 11th section of the Act of 1792 were substantially complied with.

*Buffington,* for defendant in error.   The action contemplated in the 11th section of the Act of 3d of April 1792, is for the purpose of settling the question of title; is a real action, and requires the owners of the freehold to be parties.   The object of the suit is to ascertain, who is entitled to the patent, not who has the right of possession; and that patent, when issued either in pursuance of the decision of the Board of Property, or of the suit at law, is declared to be a perfect title.   If on appeal from the decision of the board, the tenant for years may be summoned as defendant, then if the decision of the board should be against the landlord, the tenant must bring the action of ejectment; for he would be entitled to the possession.   This would be at variance with the design of the legislature, and contrary to the settled law in regard to appeals.   The parties litigant before the board, must be the parties that litigate in court, otherwise the secretary of the land-office could not know from the prothonotary's certificate, whether an appeal had been taken or not.   When the Act speaks of a suit at common law, it merely speaks of a proceeding in a common law court, according to common law forms.   It does not speak of an ejectment; and may it not have contemplated a writ of right where the tenants of the freehold must be parties?   I do not say that ejectment is not a proper form of action, if the design of the legislature in making it an appeal with the proper parties is observed; but a proceeding in the nature of a writ of right would seem to answer the views of the legislature more appropriately than any other, as the object is to settle the title finally and conclusively, as to all parties and privies to the *caveat* or suit.

The Act also speaks of the patent issuing " to the party in whom the *title* is found by law."

The suit at law is an appeal from the decision of the Board of Property.   2 *Smith's Laws* 15, *note ;* 6 *Watts* 292; 5 *Watts* 194.

The same rule applies to appeals that does to writs of error in regard to parties.   1 *Serg. & Rawle* 495.

A writ of error does not lie against any one, nor by any one, but parties or privies to the first judgment.   *Bac. Abr.* 456, 457, *tit. Error ;* 3 *Mass.* 223; 1 *Serg. & Rawle* 492; 6 *Serg. & Rawle* 315; 8 *Johns. Rep.* 565.

The suit at law ought to be prosecuted with due diligence; and the fact, that the plaintiff neglected to prosecute his suit for a period of upwards of twenty years, was gross negligence, and amounted to an abandonment of his appeal.   8 *Serg. & Rawle* 505; 3 *Rawle* 9.

When John Altemus disavowed the tenancy, and held adversely as manifested by all his acts, it was a disseisin; at least, was so by the election of Adam in bringing suit, after which there was

II.— 33                    w *

no privity between them; and nothing done by or against John could affect the right of Adam. They were total strangers, as much so as vendor and vendee after deed executed. 10 *Watts* 224.

The opinion of the Court was delivered by

SERGEANT, J.—The plaintiff claims under Wakefield. Both parties claimed by improvement rights. The defendant sets up as a bar the decision of the Board of Property in his favour, on the 7th of February 1817, on a *caveat* in *Wakefield* v. *Altemus*, alleging that no suit had been brought within six months by the other party. The plaintiff contends that the evidence offered by him in the court below, exempted him from the bar of the 11th section of the Act of 3d of April 1792. By that section, when any *caveat* is determined by the Board of Property, the patent shall be stayed for six months, within which time the party against whom the determination of the board is, may enter his suit at common law, but not afterwards; and the party in whose favour the determination of the board is, shall be deemed and taken to be in possession, to all the intents and purposes of trying the title, although the other party is in actual possession, which supposed possession shall nevertheless have no effect; at the end of which term of six months afterwards, if no suit is entered, a patent shall issue according to the determination of the board, upon the applicant producing a certificate of the prothonotary of the proper county, that no suit is commenced; or if a suit is entered, a patent shall, at the determination of such suit, issue in common form, &c. The records offered by the plaintiff showed, that within the six months two ejectments had been brought. The first was to June Term 1817, by Adam Altemus against John Altemus, in which, on the 27th of October 1818, Wakefield was admitted as co-defendant. This cause was tried at June Term 1819, and the verdict and judgment rendered for the defendants. Another ejectment was brought to September Term 1817, by Wakefield against John Altemus; which, like the former, was put at issue, and was on the trial lists of September Term 1818, and June Term 1819; since which no step appears to have been taken in it. The plaintiff had previously proved by John Altemus, that he, (the witness), had taken possession of the land in 1814, as tenant of Adam Altemus. In consequence of a dispute between them the next year (1815), he refused to give up the possession to Adam, denying his right. The latter attempted to gain possession by a landlord and tenant proceeding, but was defeated owing to a defect in the notice. As the dispute then occurred between Wakefield and Adam Altemus, John continued in possession and remained there till after the verdict and judgment in favour of Wakefield in 1819, when John took a lease from Wakefield, who held the possession till 1840, when he was ejected by a recovery against him by Adam Altemus, whom the present defendant represents. The plaintiff,

[Wilson v. Altemus.]

in addition, offered the testimony of D. Stanard, Esq., that he was employed by Adam Altemus as his counsel in the suit against John.   He was also counsel in the suit brought by Wakefield against John Altemus, but could not say who employed him.

The ejectment brought by Adam Altemus against John Altemus, cannot be considered as a compliance with the requisition of the Act of Assembly.   It was not a suit by Wakefield, against whom the decision of the Board of Property was had, but by Adam Altemus, who had succeeded there.   It was also brought by him against his tenant to recover possession, and could not in any way bring in question the dispute between Adam Altemus and Wakefield.   It is true, Wakefield was admitted co-defendant, and he might have put in issue the title between him and Adam Altemus, and probably did.   Though it seems strange that Wakefield should have been allowed to interfere between Adam and his tenant, and prevent the landlord's recovery of the possession against his own tenant, and this could only have happened by the suppression of the facts now developed by the testimony of John Altemus.   Notwithstanding this was permitted, the suit is liable to the objection, that it was not brought by Wakefield, the losing party on the trial of the *caveat* against Adam Altemus, the successful one, as the words of the Act require.   Nor can it come within the equity of the Act, because Wakefield was not made a co-defendant till more than six months had elapsed after the decision of the board.   As to the argument that because Wakefield was made co-defendant by consent, and both suits were pending, and the prosecution of Wakefield's ejectment was suspended after the trial and judgment in his favour in the other suit, it is therefore to be presumed the parties agreed that the trial of one suit should determine their rights, some evidence more positive must be produced to show such an agreement, and enable the present plaintiff to get rid of the express words of the Act.   There was no difficulty in his bringing his ejectment against Adam Altemus within the six months, and prosecuting it to trial.   The Act of Assembly expressly authorized him to do so.   It is said that neither party was in possession, and therefore the case is not provided for by the Act of Assembly.   But the evidence shows that Adam was in fact in possession by his tenant, John Altemus, and so continued: for John could not by his act defeat that possession to the injury of his landlord, and transfer it to a stranger.   The possession was, in point of law, never out of Adam till he was defeated on the trial in 1819.   But I do not perceive why the Act should not apply, though neither party is in possession,   The words are express that " the party in whose favour the determination of the board is, shall be deemed and taken to be in possession."   The next words " although the other party is in actual possession," do not confine the provision to that case only ;· but it extends to every case, even to that which is the strongest that can exist, of

[Wilson v. Altemus.]

the party that is required to bring suit being himself in possession, and, by the ordinary rules in ejectment, not capable of bringing an ejectment at all.

Still less ground is there for contending that the suit by Wakefield against John Altemus was a compliance with the law. John was not a party to the *caveat* and trial before the Board of Property. The ejectment being in nature of an appeal, the Act requires that it should be between the same parties who were litigating before the board of property. It would be strange if an ejectment by Wakefield against a third person, though in actual possession of the land, could bind the rights of another with whom he had disputed before the board of property, and whose title had there prevailed as the best. It is a settled principle of justice that no one is to be bound by a judicial proceeding to which he is no party. If it had been proved that Adam Altemus had employed Stanard in that suit, (which his testimony by no means establishes,) yet even that would not suffice. The Act requires the suit to be against the litigant party, and that was Adam Altemus, and not John. It is said that John was the tenant of Adam; but it now turns out that John, though placed in possession by Adam, was, at that time, hostile to Adam, disclaiming the tenancy, and endeavouring to destroy his lessor's title. Besides this, if the ejectment had been duly brought, it was not duly prosecuted. After a lapse of more than twenty years, it might be presumed to be abandoned, and Adam then had a right to the patent. It is possible, and not unlikely, that the plaintiff was not aware of the legal construction of the 11th section of the Act of 3d of April 1792, which has been held in *Shoenberger* v. *Becht*, (5 *Watts* 194), to apply to all the lands in the state then vacant and unappropriated, and that he rested under the impression that he was not bound to comply with its provisions. Unless this had been the case, it is not likely that he would have permitted the six months to pass by without instituting a suit in the mode required by it. But having allowed this, he is bound by the limitation contained in the Act. The evidence was, therefore, properly rejected.

Judgment affirmed.