## CUNNINGHAM *vs.* LITTLEFIELD.

Where a party in a joint speculation pays for goods and sells them *bona fide* he cannot be charged with a loss arising from the failure of the purchaser: but is entitled to be reimbursed one half of the money advanced for the original purchase; and this will be so, even although he may have declared the debt secured and afterwards accepted of a compromise without the consent or knowledge of the other party, provided there was no deceit or misleading.

In such a case, the parties are not in the relative situation of principal and agent, but of partners.

One partner can bind another in the settlement, adjustment and compounding of a debt due to them jointly, without the knowledge or express assent of the other; and when such a power is exercised in good faith and in relation to a matter within the scope of the partnership, he cannot be responsible to the other for error of judgment or any thing short of a dereliction of duty.

*September* 16.
1831.

*Partnership. Individual powers in a joint speculation.*

NATHANIEL F. CUNNINGHAM, the complainant, was a merchant at Boston. The defendant, Nathaniel Littlefield, resided in New York, and was also a merchant.

On the second of April one thousand eight hundred and twenty-eight, the former wrote to the latter to purchase a quantity of Mobile cotton on their joint account and ship it to him (Cunningham) at Boston, to be sold on such joint account, provided the defendant could purchase it at a limited price for his bill on the complainant at sixty days. The defendant accordingly purchased and shipped thirty-five bales; and drew his bill on the complainant for the purchase money and interest, amounting to one thousand three hundred and eight dollars and eighteen cents, which the complainant accepted and paid at maturity.

He received the cotton; and, on the twenty-second of the same April, sold it to an incorporated manufacturing company, then in good credit, at $11\frac{1}{4}$ cents per pound, payable in six

months—the whole sale amounting to one thousand four hundred and fifteen dollars. A few days after the sale, however, the company failed. The complainant instituted legal proceedings to recover the amount, which proved unavailing. At length, on the thirteenth day of January one thousand eight hundred and twenty-nine, one Manley, the agent of the company, made to the creditors generally an offer of compromise of the company's debts of fifty cents in cash and his notes for the residue, payable in equal parts, at the end of four, five and six years. This offer was made upon condition of its being accepted by three o'clock of the next day, so that there was not time for the complainant to consult the defendant concerning it; but deeming it for their interest, he agreed to the same —as did every other creditor of the company. He accordingly received one half of the debt in cash and two notes of equal amount for the other half, pursuant to the offer. One of the notes was for the complainant's account and the other intended for the defendant—and which he offered to deliver to the latter, but at the same time insisted upon a reimbursement from the defendant of one half of the purchase money for the cotton, after a deduction of one half of the amount received upon the compromise. This, the defendant, Mr. Littlefield, refused; and Mr. Cunningham accordingly filed his bill to compel a reimbursement of such balance.

Besides the bare facts which we have above detailed, there were letters between the parties, having a bearing upon the case. They will be found fully referred to in the opinion of the court.

Mr. *D. D. Field*, for the complainant.

Mr. *S. P. Staples*, for the defendant.

The Vice-Chancellor. The defendant resists the claim *October 17.* set up in this bill upon several grounds.

The first, and which I shall notice as being perhaps the most important, is, that the complainant, by his conduct, has made the debt his own; and has, therefore, no right to call upon the

defendant to reimburse him. To make out this, the letters which passed between the parties have been produced. In the first letter from the defendant to the complainant of the eighth of April, one thousand eight hundred and twenty eight, enclosing the bill of lading and invoice, he says, by way of advice or direction: " I would not sell for less than 11½ cents ; and " sell for such paper as we can have guaranteed one half of, " if required."

The complainant replies, by letter of the seventeenth of April, saying, the cotton would not sell for 11½ cents ; that he thought eleven cents the extent it would bring ; and enquires, whether it was better to sell for eleven, or hold on ?  To this, the defendant answers, on the nineteenth of April, advising the complainant not to sell for less than eleven and an half cents or thereabouts at six months : but, in a postscript, adds, " if " eleven and a quarter pays, and a prime note, do as you think ".best." On the twenty-second of April, the complainant writes, that about half an hour before the letter of the nineteenth of April was received, he sold the cotton at eleven and a quarter cents and on six months credit, to the Eastern Manufacturing Company, and considered their note first rate or he should not have sold to them ; and that the principal part of the stock of the company belonged to Williams and Wendall, who were allowed to be rich men. On the twenty-eighth of the same April, the complainant writes, that since the last letter he had received intelligence of the failure of Williams and Wendall, but that their failure did not affect the Eastern Company, which, as a body corporate, was perfectly solvent. He then reasons on the subject ; and adds, he thought it his duty to write to the defendant, lest hearing of their failure and knowing their interest in the factory, the defendant might feel some uneasiness ; " for myself," he adds, " I have as much confidence in the cor- " poration as I had before ; for I have the best evidence for " believing the company are not only able to pay their debts, " but are worth, over and above that amount, fifteen thousand " dollars ; and I positively would not pay five per cent. to gua- " rantee my part of the claim on them."

Again, on the thirtieth of April, the complainant wrote to the

defendant, stating that he had written on the twenty-eighth, since which he was without any letter from the defendant; that the agent of the company had been with him that morning more than an hour and if possible he, the complainant, was more sanguine than ever, that the debt was a perfectly good one, though he apprehended some little delay in the payment, but, of the ultimate payment and that soon after the note would become due, he had no doubt.

On receipt of the letter of the twenty-eighth of April and before that of the thirtieth came to hand, the defendant writes to the complainant, expressing his astonishment at the contrasting information contained in the two letters of the twenty-third and twenty-eighth days of April, and said, whether the failure announced affected the Eastern Manufacturing Company or not, he should expect the complainant to guarantee one half on the usual terms, agreeable to the letter of instructions accompanying the shipment of the cotton; insisted he had no right to sell for any other paper than such as could be guaranteed; and requested him, therefore, to signify, by return of post, what guarantee would be charged. To the defendant's letter of the first of May, the complainant replied on the third of the same month, and asserted, that at the time of the sale the company's credit was undoubted and their note could easily have been guaranteed at the usual rate, but that he never guaranteed notes, and should not do it in this instance; also, that it was not at all probable their note would then be guaranteed in the market at a fair rate, though he was of opinion something might be done with the agent, whereby security might be got, if not for the whole, at least, for part of the debt. In answer, the defendant, on the third of May, requested the complainant to see at what rate one half of the debt would be guaranteed to his satisfaction; and proposed to leave the question, as to who should bear the charge of premium, to a future investigation. On the tenth of May the complainant wrote that he was waiting to see the agent, in order to return an answer to the letter of the fifth of May; that he still continued to feel great confidence in the solvency of the corporation. And on the seventeenth of May, he again wrote that he had then the satisfac-

1831.

CUNNINGHAM
*v.*
LITTLEFIELD.

tion to state that the claim was secured by an attachment upon the real estate and machinery of the company; that he had succeeded in exchanging the note he held for one payable on demand, thereby enabling him to make the attachment, which was done on the evening of the thirteenth: "thus," he said, "is secured, but locked up until November next, the amount of "the debt." He then informed the defendant, that when the draft of one thousand three hundred and eight dollars should become due, he might have occasion to draw upon him for the half of it. To this letter, the defendant, on the twenty-sixth of May, replied, saying, he was glad to hear the complainant had secured the debt, and intimated, he had rather the complainant would not draw upon him, and that the latter should pay the money when due agreeably to the tenor of the order for the cotton, without redrawing upon him, as the complainant could not have expected to sell the cotton on a shorter credit than six months; and if the sales were not then realized, it might perhaps be proper for him to refund to the complainant at that time.

On the fourth of June immediately following, the complainant advised the defendant that he had drawn upon him for six hundred dollars, and made his draft at five months, because he trusted that he should realize the debt from the Eastern Company by the time the draft became due and thus be in funds for the defendant in season to pay the draft.

The defendant refused to accept it; and the correspondence ceased for a time. It was not resumed until January one thousand eight hundred and twenty-nine, when the complainant informed the defendant of his having accepted the compromise before mentioned; which the defendant immediately disclaimed and refused to recognize in any shape, unless the complainant should think proper to consider the long-notes he had taken as so much cash.

Upon this state of facts, the court is called upon to settle the controversy between the parties, more important, I am satisfied, in point of feeling than in amount.

There is no doubt and indeed it is admitted on the part of the defendant, that the complainant had a right to dispose of

the cotton at the price and upon the credit at which it was sold; and it is abundantly proved, that the purchasers were, at the time, in good standing and supposed to be perfectly trust-worthy. There is, therefore, no reason for charging the complainant with the loss on the ground of any want of care in making the sale.

But it is said, that the complainant was either bound to guarantee the defendant's part of the debt: or, having declared it to be perfectly safe and secured by attachment, he is not at liberty to treat it otherwise. With respect to the first of these points, I am clearly of opinion the complainant was under no obligation to guarantee the debt to the defendant; and it is very certain he never expressly undertook to do so. On the contrary, when pressed upon the subject by the defendant, he peremptorily refused to give any such guarantee. I think it follows, from this very circumstance, that he is not bound to make good the debt, merely because he thought proper to express himself in positive terms that he had secured it and considered the same perfectly safe. Even the defendant himself did not consider the complainant bound by such expressions : for it appears that, after receiving the letters containing those expressions, he endeavored to prevail on the complainant to enter into a contract of guarantee and requested him to name the commission or premium he would charge. I think, therefore, nothing has grown out of the correspondence between the parties to render the complainant liable.

Thus far, the case is anologous in principle to *Lyles* v. *Styles*, 2 *Wash. C. C. R.* 224. There, the plaintiff had shipped in the defendant's vessel, which he commanded, a parcel of goods on their joint account to be carried to a port in St. Domingo and there to be sold on such joint account. The plaintiff put into the defendant's hands a paper containing his views of what should be done with the property, particularly advising that no part of it should be left unsold and that it should be disposed of for cash or produce. The defendant, notwithstanding, sold the goods and took in payment certain government bills on France, which were dishonored. In the action brought by the plaintiff it was contended, that the whole loss should be borne

1831.

CUNNINGHAM
*v.*
LITTLEFIELD.

by the defendant. On the trial, Judge Washington charged the jury, that the plaintiff and defendant being jointly concern- ed in the adventure, the defendant had the power and interest of a partner as to its disposition; that the plaintiff had the right to advise, but not to order; and that his letter was to be re- garded in that light instead of a letter of instructions or an agreement that the defendant was to sell for cash or produce. And he held, that if the defendant acted fairly and in good faith, then there was no ground upon which to charge him with the loss of the bills. I regard this decision as sound in princi- ple and strongly applicable to the present case.

Another ground taken by the defendant is, that the complain- ant, having at one time declared the debt to be secured and afterwards accepted a compromise without the knowledge or consent of the defendant, he has thereby made the whole debt his own and has no right to call upon the defendant for a con- tribution. I cannot admit this proposition to be correct, without the proof of other facts than are at present before me. That the complainant has been over-credulous, I can readily imagine; but I perceive no motive which he could have for deceiving or misleading the defendant; and must presume, until the contra- ry be shown, that his representations, as to the safety and se- curity of the debt, were made from what he honestly believed to be true. He, undoubtedly, deceived himself in supposing the debt was secured; but, having discovered his error, he acted with a due regard to the best interests of himself and the defendant in acceding to the terms offered to the creditors. The testimony taken under the commission is full and explicit on the point.

Neither have I any doubt as to the right of the complainant to make the compromise without first consulting the defendant, provided it was done, as it appears it was, from honest motives; for it must be borne in mind, that the parties stood in the rela- tion, not of principal and agent towards each other, but of part- ners; and, as such, either party was fully authorized to bind the other in any matter concerning the partnership business. The authority to do so was already delegated and no new power was necessary to be conferred in order to enable the

complainant to settle, adjust or compound the debt due to them jointly. Such a power necessarily results from the very nature of a partnership and from the principle that each partner is possessed *per my et per tout;* and it may be exercised, whenever necessary or proper, by one without the knowledge or express assent of the other. The law on this subject is very clearly laid down by *Colden* Senator, in *Smith* v. *Lusher,* 5 *Cow.* 710.

The right and authority of one partner to bind the other without his knowledge in any matter relating to the partnership business being established, it follows, that whenever such a power is exercised by one partner in good faith and in relation to a matter within the scope of the partnership, he cannot be responsible to the other for error of judgment or for any thing short of a dereliction of duty.

The whole question, in the present case, as regards the compromise, turns upon the motive with which the complainant acted? And nothing being shown to impeach his motives, I see no reason why the loss, if any there be, or why the inconvenience arising from the delay in the payment of the debt, should be thrown exclusively upon him.

The case of *Halsted* v. *Schmelzel,* 17 *J. R.* 80, was cited by the defendant's counsel as bearing upon this point. The court there observed, that the plaintiffs received the debt as their own and treated it as such and acted in such a manner as to take away all right to throw any part of the loss on the defendant. But, one principal reason of the decision made by the court in that case was, that the compromise made by the plaintiff was unjustifiable, as the evidence showed how one of the debtors was always able to pay the debt. In this respect it is distinguishable from the present case.

It has been moreover urged, that, by the complainant's assurance of the debt's being perfectly secured, the defendant has been thrown off his guard and prevented from taking measures which he otherwise might have done to collect or secure his part of it. There would be much force in this argument, if it were shown there was even a probability that the defendant could have recovered (by any personal exertions of his own)

**1831.**

CUNNINGHAM
*v.*
LITTLEFIELD.

any greater portion of the debt than has actually been paid; but, in the absence of all proof on the subject, I cannot permit the observation to have any weight.

Again, it is urged, that this suit is prematurely brought, for the complainant was bound to wait for his reimbursement out of the sales. I am inclined to think, according to a fair construction of the agreement, the complainant was impliedly bound to wait the expiration of the credit at which the cotton was originally sold: but when, in consequence of the purchaser's insolvency, the credit was obliged to be extended far beyond the original limit and without any fault of the complainant and every thing else was fair on his part, I see no reason why the defendant should not in equity contribute at once to his reimbursement. The case of *Peltier* v. *Sewall*, 3 *Wend.* 269, is not applicable to this point: that being a case of a special contract to pay only for the loss which might occur on the sales and not for the advance made by the plaintiff to the defendant on the shipment of the goods.

The remaining question made on the part of the defendant is, that the complainant had an adequate remedy at law. I am inclined to think, under the circumstances of this case and upon the authorities cited, the complainant might have maintained an action. Still, it by no means follows, there is not a concurrent remedy here. This court has jurisdiction of all matters of account; and it is under this head, that partnership dealings form the subject of equitable cognizance: *Gow on Partnership*, 177. I have no doubt of the right of the party to seek relief in this court, whatever he might have done in a court of law.

Upon the whole, I must decree that the complainant is entitled to a settlement of this partnership transaction, and to be reimbursed, by the defendant, the balance due to him for one half of the money paid for the cotton, with interest and his costs of this suit to be taxed.

Unless the parties agree upon the amount of such balance, there must be a reference to a master in order to ascertain it.