Scranton and others *vs.* Demere.

---

No. 10.—Alexander Scranton, *et al.* plaintiffs in error, *vs.* Rose Demere and John Demere, by *prochein ami*, defendants.

[1.] Where a warrant of attorney was executed under the rule of Court, to confirm an appeal entered by the agent of the party to the suit, in which it was recited, that " I do hereby ratify and confirm all that my said attorney has done, or may hereafter do in my name, in the premises, without incurring cost to me:" *Held*, that the authority of the agent to enter the appeal, was ratified by his principal, and that he would be bound for all costs necessarily incident to the entering such appeal, notwithstanding the qualification in the warrant of attorney.

[2.] Where a free person of color is a party to a suit, in the Courts of this State, and dies, the suit abates ; and administration should be taken out on the estate of such free person of color.

Scranton and others *vs.* Demere.

[3.] Where a decree was obtained in favor of legatees, against the executors of the testator's will, for their legacies under it, and the executors have admitted assets in their hands, sufficient to pay them: *Held*, that property which had been distributed to another legatee, under the will, with the assent of the executors, could not be first seized and sold in satisfaction of such decree, against the executors alone, when it did not appear there was any deficiency of assets to pay all the legacies, and the legatee whose property was taken, was *no party* to the decree; notwithstanding it was declared by the decree that it should be a lien upon, and bind the whole estate of the testator. The estate of the testator, in the hands of the executors, is *first* liable for the satisfaction of the decree, before such portion of it as had been distributed to legatees who were not parties to the decree, and who had been in possession of it for several years, with the assent of the executors.

Levy and claim, in Glynn Superior Court. Decided by Judge FLEMING.

In 1828, Raymond Demere made his will, the third item of which was as follows :

" Whereas, from the fidelity of my negro man Joy, and my negro woman Rose, who not only saved and protected a great part of my property during the time the British occupied St. Simons, but actually buried and saved a large sum of money, with which they might have absconded and obtained their freedom; it is therefore my will, and I direct my executors to petition the Legislature to pass an Act for the manumission of my said negroes, and their two children, Jim and John, and any other children Rose may have, setting forth their meritorious behavior and faithful conduct during a period of invasion, when nearly all the negroes on St. Simons deserted and joined the British."

" It is also my will, and I direct if the said Joy, Rose and her children are freed by law, and remain in Georgia, that the said Joy, Rose and her son Jim, shall each receive two cows and calves from my stock on St. Simons."

After making a devise of land to said negroes, testator further provides : " And also, that said Joy, Rose and her children, shall receive from my estate, one year's provision, from the time they take possession of their land ; and also, that my executors shall pay from my estate, or have the payment of the same secured, viz : to my negro woman Rose, during her lifetime, an annuity of seventy-five dollars ; and also, the further sum of seventy-five dollars, for the support of her son John, until he arrives at the age of twenty-one years ; and then, my executors are direct-

ed to pay unto the said John, from my estate, the sum of $1000 lawful money."

After making provision for the education of John, and the protection of their rights, the testator divides his estate, real and personal—one half to Joseph Demere, his son, and one half to certain grandsons.

The Legislature of Georgia manumitted the said slaves, as desired in the will. The executors failed to pay the legacies and annuities to Joy, Rose and her children, but distributed the whole estate to the residuary legatees. In 1843, (Joy and Jim being dead,) Rose Demere and John Demere, by their next friend, Alexander Mitchell, filed their bill against the executors, praying an account of their annuities and legacies; and such proceedings were had, that at April Term, 1845, a decree was rendered in favor of the complainant, for and in behalf of Rose Demere, " the sum of $3,000, the amount due her 31st December, 1842, $150 for her annuity for 1843, and $75 for every year as long as she lives ;" and for and in behalf of John Demere, " the sum of $1024." " And we further decree, that this decree shall be a lien upon, and bind the whole estate of the said Raymond Demere."

Execution issued thereon, and the grandsons, residuary legatees of one half the estate, paid thereon, one half of the same.

On the 13th March, 1846, the execution was levied on thirteen negroes, viz : Charles, Harrington, Flora, Adam, Eve, Cupid, Judy, Paul, Rhina, Sam, Mary and Flora, to which negroes a claim was regularly interposed by Alexander Scranton and Edwin M. Moore, trustees.

At November Term, 1847, a verdict was rendered by the Petit Jury, in favor of the claimants. Upon said verdict being rendered, Solomon Cohen, Esq. not being the attorney at law of the plaintiffs in *fi. fa.* moved the Court at said term, for leave to file a warrant of attorney from the plaintiff, within sixty days to appeal, and did on that day enter an appeal, and thirty days thereafter, under said order, filed the following warrant of attorney :

| " Rose Demere, &c. plaintiffs in *fi. fa.* | |
|---|---|
| *vs.* | Glynn Superior Court, |
| John Cooper, *et al.* defendants, | Claim, &c. |
| Moore & Scranton, trustees, claimants. | |

Know all men by these presents, that I, Alexander Mitchell,

*prochein ami* of Rose and John Demere, do hereby make, constitute and appoint Solomon Cohen my attorney, to enter an appeal in the above stated case, from the verdict of the Petit Jury, rendered at the November Term of the Glynn Superior Court, in the year 1847, hereby ratifying and confirming all that my said attorney has done, or may hereafter do, in my name, in the premises, *without incurring costs to me.*

Witness my hand and seal, at Darien, this 20th Dec. 1847.

ALEXANDER MITCHELL, *Pro. Am.* [L. s.]

Witness, SAMUEL PALMER, J. I. M. C.

Before the appeal or verdict of the Petit Jury, Rose Demere died.

At the April Term, 1848, a motion was made to dismiss the appeal, on the following grounds :

1st. That the appeal was not entered in conformity to law.

2nd. That no power of attorney, authorizing said appeal to be entered, has been filed.

3d. That there were no legal parties capable of entering an appeal.

By consent, the above motion, and the law and facts of the case, were agreed to be argued before Judge Fleming, at Chambers, and his decision upon the law and testimony to be entered as the judgment of the Court, and a verdict was taken accordingly.

It was proven before Judge Fleming, that Joseph Demere married, and in 1833 made an assignment of his property to pay his debts, and the residue settled in certain trusts, for himself and wife, and next of kin. In 1839, Joseph Demere died, and his widow having intermarried with one James Moore, made an agreement with the next of kin, by which the property was divided, and thirty-four negroes were conveyed, with the assent of the executors, to the claimants, as trustees for her. The negroes levied on were a portion of these.

· It was proven by the depositions of one James Mayo, that " five of the above named negroes, (the negroes levied on,) were purchased with funds of the estate of Raymond Demere, Sr. which went to Joseph Demere, as his part of his share of said estate, with the assent of the executors. The five negroes are named Harrington, Flora, Charles, Cupid and Judy."

Upon hearing argument upon the motion to dismiss the appeal,

Scranton and others *vs.* Demere.

and also upon the merits of the cause, the Court below overruled the motion to dismiss the appeal, and also decided that the suit did not abate by the death of Rose Demere, and that the negroes levied on were subject to the execution ; to which decision of the Court the counsel for the claimants excepted, and now assign the same for error here.

HENRY & WARD and LLOYD & OWENS, for plaintiffs in error.

We respectfully submit to the Court the following propositions, on the part of the plaintiffs in error :

1st. Where a claim case is pending, under the provisions of our Statute, and the person for whose use the same is pending dies, the said suit abates until his legal representatives are made parties.    3 *Kelly*, 159.

2nd. By the death of an infant, suing by his guardian, the suit is abated.    41 *Law Lib.* 51.

3d. Letters of administration may and ought to be granted upon the estate of deceased free persons of color, who die intestate, for although they have no political, they have personal rights.    4 *Ga. R.* 72.

4th. One of those rights is in the right of inheritance as heirs, legatees and distributees.    *Prince*, 799.    *Act of* 1830, *p.* 187.    2 *Kent*, 258, *note*.

5th. Even if the right to inherit as heirs, legatees and distributees, does not exist, the property, at the death of the ward, passes out of the guardian, and vests immediately in the people of this State ; and if letters of administration be necessary to reduce the same into possession, the escheator is bound, by his oath of office, to take out such letters.    *Prince*, 789.    *Hotch.* 488, 489.

6th. But if we are in error on the foregoing propositions, the appeal ought to have been dismissed by the Court below, the same not having been entered in compliance with our Statute, in such cases made and provided.    Under our Statute, there are but two modes of entering an appeal ; one by giving bond, the other by filing an affidavit.    In this case, the former mode has been adopted.    The party, therefore, appealing, must be bound for the costs.    This can only be done by himself, or by an agent duly authorized for that purpose.    It is not pretended that he is bound

Scranton and others *vs.* Demere.

by his own act, but by the act of his agent, Solomon Cohen, Esq. duly authorized for that purpose.

7th. An agent, constituted for a particular purpose, under a limited power, cannot bind his principal, if he exceed that power. 2 *Kent's Com.* 620. *Story on Contracts*, 201, 202. 28 *Law Lib. top page*, 78.

In the discussion of the merits of this case, two questions present themselves for the consideration of the Court : 1st. What were the rights of these claimants, (or plaintiffs in error,) independent of the decree of 22d April, 1845 ? 2nd. How have those rights been affected by that decree ?

1st. What are the rights of the plaintiffs in error, independent of the above decree ?

Upon the death of a party, the whole interest in the personal property vests in the executor, and his disposition of it is binding against creditors, distributees and legatees, so long as he remains solvent. 4 *Term R.* 625. 1 *Kelly*, 388.

By the assent of the executor to the legacy, the whole legal interest vests in the legatees, and they may bring trover or ejectment against the executor, in their own name. *Toller on Ex'rs*, 311. 6 *Carr & Payne*, 126. 3 *East*, 120. 1 *Story's Eq.* 554. 1 *Kelly*, 645.

The executors having assented to the legacy, and the legal estate having passed out of them, there remains no legal interest in them, which can be levied on by execution. *Dudley*, 99. *Harper's Law R.* 20. 2 *Hill*, 522. 1 *Minor*, 95.

Not only the legal but the equitable interest in the estate passes out of the executor, by his assent to the legacy, and vests in the legatee. We assert the above principle—

First. Because the legacy having been delivered over by the executor, the law will presume that he has retained in his hands assets of the estate, sufficient to pay all the remaining legacies, and all debts, and if solvent, the Court will compel him to do so. 2 *Vesey, Sr.* 194. 25 *Law Lib.* 243. 2 *Comyn's Dig.* 498, 499.

Second. Because, even if there should be a deficiency of assets, unless that deficiency existed at the time the legacy was paid, a legatee who has failed to secure his legacy, cannot, even by bill, claim contribution. *Toller on Ex'rs*, 341. 1 *Peere Williams*, 495. 1 *Story's Eq.* 110.

There is nothing in the wording of this will, which exempts

the legacies to Rose Demere and John Demere, from the ordinary rule. 18 *Law Lib.* 192. 25 *Ib.* 235, 236. *Fonblanque, top page*, 563. 3 *Atk.* 693. 2 *Johns. Ch.* 620.

2d. How are the rights of these plaintiffs in error, affected by the decree of 22d April, 1845 ?

The latter clause of this decree, by which our property is sought to be subjected to the execution issuing thereon, can only be applied to that portion of the estate of Raymond Demere, Sr. in the hands of the executors, properly applicable to the payment of these legacies. *Bailey's Eq.* 163.

First. Then, independent of the above decree, the plaintiffs in execution, under the facts of this case, can have no claim against the property levied on, either at Law or in Equity.

Second. By that decree, our rights have not been in any manner affected.

S. Cohen and Harden & Lawton, for defendants in error.

The counsel for the defendants in error submit the following statement of points and authorities :

1st. The suit has not abated, and therefore there is no necessity to make new parties. *Cooper & Worsham vs. City Council*, 4 *Ga. R.* 68. *Prince's Dig.* 789, 802, 808, 797, 799, 225, 233. *Constitution of Georgia*, §1, *Art.* 8. 1 *Story's Eq. Pl. sec.* 354.

2nd. The escheator cannot be made a party. *Hotch.* 489, 490. *Charlton's (T. U. P.) Rep.* 313. 2 *Bailey*, 387.

3d. The appeal was properly entered, and the power of attorney is full and complete. *Prince's Dig.* 789, §56. 1 *Kelly,* 275. 2 *Ib.* 236.

4th. Legacies are not barred by the Statute of Limitations, and the property of the testator, in the hands of a distributee, is liable to an annuitant. *Irby vs. McRae*, 4 *Dess.* 422, 432. *Glenn vs. Fisher*, 6 *Johns. Ch. R.* 33. *Luffton vs. Luffton*, 2 *Johns. Ch. R.* 614. *Maxwell vs. Maxwell*, *R. M. Charlton's R.* 462, 465, *et seq. Davies vs. Wattier*, 1 *Sim. & Stewart*, 463. *Cairnes vs. Iverson*, 3 *Kelly*, 132, 135. *Grigg vs. Summerville*, 1 *Russ. & Mylne*, 338. *March vs. Russell*, 3 *Mylne & Craig*, 32, 41. 1 *Story's Eq. Jur. sec.* 92, and note.

*By the Court.*—Warner, J. delivering the opinion.

Scranton and others *vs.* Demere.

Three questions are made by the record, for our consideration and judgment, in this case.

[1.] 1st. Whether the motion to dismiss the appeal, entered under the authority of the warrant of attorney, was properly overruled by the Court below.

2d. Whether the suit abated, by the death of Rose Demere; and—

3d. Were the negroes levied upon, in the possession of one of the legatees under the will, with the assent of the executors, subject to be first taken, in satisfaction of the decree made against the executors, as stated in the record?

The motion to dismiss the appeal was, in our judgment, properly overruled by the Court below.   The appeal was entered before the warrant of attorney was procured from Mitchell, authorizing Mr. Cohen to act in the premises.   Time was given by the Court, in accordance with the third Common Law rule of practice, to file the warrant of attorney, which was done within the time allowed.   In the warrant of attorney, Mr. Cohen is expressly authorized to *enter an appeal in the case,* from the verdict rendered by the Petit Jury, and the principal expressly ratifies and confirms all that his said attorney *has done,* or may hereafter do in his name in the premises, *without incurring costs to him.* It is objected that the qualification as to the *costs,* in the warrant of attorney executed by Mitchell, renders the appeal entered by his attorney, Mr. Cohen, before the execution of the warrant by him, void, inasmuch as the appeal could not be entered, without the payment of costs.   The appeal, however, had been already entered, when the warrant of attorney was executed, and by its express language, Mitchell *ratifies* and *confirms* what his attorney *has done* in his name, *in the premises.*   One of the legal consequences which attach, on the entering an appeal, is the payment of costs.   We cannot suppose, by any fair construction of this warrant of attorney, that it was the intention of Mitchell to authorize his attorney to do an act, and annex a condition in the authority given him, which would defeat its accomplishment. The construction which we give to the warrant of attorney is, that Mitchell intended to confirm and ratify the appeal entered in the case, by Mr. Cohen, his attorney, without incurring any other or greater amount of costs, than such as was *legally incident* to entering the appeal.   Whatever may have been his intention,

we think that inasmuch as the payment of costs is a necessary and legal incident to the entering the appeal, and having *expressly ratified* and *confirmed* the act of his attorney, in entering it, he would in law be bound for the *legal costs of the appeal,* notwithstanding the qualification in the warrant of attorney.

[2.] Did the suit abate in the Court below, by the death of Rose Demere? In *Barker vs. Bethune,* (3 *Kelly,* 159,) we held, that on the death of the usee of the plaintiff in execution in a claim case, the suit abated. But it is said that the decedent in this case, being a free person of color, does not come within the principle of the decision in *Barker vs. Bethune,* for the reason, no administration can be granted on her estate. So far as we know, this is a new question in the Courts of this State. In the case of *Cooper and Worsham vs. The Mayor and Aldermen of Savannah,* (4 *Ga. R.* 72,) we held that free persons of color were not citizens, as contemplated by our Constitution and Laws; that they had no *political* rights, and had always been regarded as our wards. By the Act of 22d December, 1819, free persons of color are authorized to hold property, and their *descendants* to inherit it after their death. *Prince,* 799. By the Act of 1829, they may sue and be sued in our Courts, by their next friend or guardian. *Prince,* 802. It is said, if administration may be granted on their estates, then, the rules of granting administration under our laws, must be extended to them; and the next of kindred of the decedent would be entitled to it, and thus they would exercise *political* rights, by holding the office of administrator. Viewing this class of our population as wards, and entitled to our protection, we think administration may be granted on their estates, without doing violence to our laws and institutions, or the declared policy thereof. We place them on the same footing with infants, with regard to administration. If an infant be the next of kindred to the deceased intestate, and thus entitled to the administration, it will be granted to his guardian, *durante minore ætate.* 1 *Williams' Ex'rs,* 295. So, upon the death of a free person of color owning property, his guardian would be entitled to administration on his estate, and not the next of kindred, as the argument supposes, for the reason that a free person of color has not the *legal capacity* to be an administrator in this State. The right of administration on their estate, would seem to follow as a necessary legal consequence, from the right

of their descendants to inherit their property after their death. In case of a contest for the administration, the guardian of the next of kindred to the deceased, would be entitled to it; if no guardian, then, such discreet white citizen whom the Court of Ordinary might think proper to appoint. By granting administration on their estates, the rights of this class of our population will be much better protected, as well as the rights of their creditors, and no injury result to the community. Their estates will be in the hands of the responsible officers of the law, who will be bound to make a just and equal distribution thereof, after the payment of debts, to the next of kindred, who may be entitled to it as their descendants. We are therefore of the opinion that the suit in the Court below abated on the death of Rose Demere, and that administration should be taken out on her estate.

[3.] Is the property in the possession of the legatee, subject to the execution, according to the facts exhibited by the record? The negroes had been distributed to Joseph Demere, the legatee, by the executors of Raymond Demere, and had been in his possession, and those claiming under him, for several years, with the assent of the executors. The decree had against the executors, it is declared, shall be a lien upon, and bind the whole estate of the testator, Raymond Demere. The legatee, whose property is now sought to be sold, in satisfaction of the decree, was *no party* to the suit in which it was rendered. The decree is against the executors alone. It is insisted by the plaintiff in execution, that inasmuch as the decree is a lien upon, and binds the whole estate of the testator, that the negroes in the hands of the legatee, distributed to him as a part of the testator's estate, are subject to be seized and sold, in satisfaction thereof.

The question made by the record before us, is not solely as to whether the decree binds the whole estate of the testator, for the payment of the complainants' legacies, but it is as to what *portion* of that estate shall *first* be applied to the payment of that decree. The complainants in the decree are not *creditors*, but they are *voluntary legatees*, under the will of the testator. It was the duty of the executors to have retained in their hands a sufficient portion of the assets of the estate of their testator, to satisfy the legacies of the complainants in the decree, when they made distribution to the other legatees, and in the absence of all proof to the contrary, we are bound to presume they did so retain. The

bill on which the decree was rendered, was filed by the complainants, against the executors of the testator, for an account and payment of their legacies, out of the *assets* of the testator, in *their hands*. The executors have not insisted upon the plea of *plene administravit*, in their answers, and a general decree having been rendered against them, on a bill to account and admit assets, must be considered as establishing the fact that they had, at the time of the rendition of the decree, a sufficiency of the assets of the testator in their hands, to satisfy and pay it. *Erving vs. Peters*, 3 *Term R.* 685. *Ramsden vs. Jackson*, 1 *Atkyns R.* 294.

The decree against the executors being an admission that they have in their hands a *sufficiency* of the assets of the testator, to satisfy and pay it, shall the execution be levied upon the property of the testator, in the hands of the legatee, or shall it be satisfied out of the testator's estate, remaining in the hands of the executors, which has not been distributed? It is our judgment that the execution issued, to enforce the decree made against the executors alone, should be satisfied out of the assets of the testator, in the hands of the executors, and not out of that portion of the testator's estate, distributed to the legatee, the more especially when such legatee was *no party* to that decree. We do not desire to be understood as intimating an opinion that the legatee would be a *necessary party* to a bill, like the one upon which this decree is founded, it being simply a bill on behalf of the complainants, against the executors, to enforce the payment of their legacies, out of the *assets* of the testator, in *their hands*. But when there is a *deficiency* of assets, to pay all the legatees, and there is to be an *abatement* of the several legacies under the will, in favor of a particular legatee, who claims not to have received his due proportion of the assets, and those to whom distribution has been made by the executors, are required to refund a portion of their legacies, such legatees as are required to refund, ought to be made parties, because their interest is affected by the decree. *Story's Eq. Pl.* 184, *sec.* 203. *Egberts vs. Wood*, 3 *Paige's Ch. R.* 520. In *Luffton vs. Luffton*, (2 *Johns. Ch. R.* 614,) it was held, that if an executor pays one legatee, and there is afterwards a *deficiency* of assets to pay the others, the legatee so paid, must refund a proportionable part. But if the deficiency of assets has been occasioned by the *waste* of the executor, the legatee who is paid may retain the advantage he has gained by his le-

gal diligence, as against his co-legatees, but not against a *creditor*. In the case before us, there is no evidence of *waste* by the executors ; but so far as the record shows, the executors have now in their hands assets of the testator sufficient to pay the decree rendered in favor of the complainants, who are co-legatees with Joseph Demere, under the will. It does not even appear there is any *deficiency* in the assets, to pay *all* the legatees. On what principle then, can the property of the legatee be seized and sold, in satisfaction of a decree, obtained by one co-legatee for his legacy, against the executors alone, who admit they have in their hands sufficient assets of the testator to pay it ? The decree undoubtedly binds the whole estate of the testator, but what portion of that estate shall *first* be appropriated to its payment, is the question ? We are of the opinion, that as there is no *deficiency* of assets apparent on the face of the record, for the payment of *all* the legacies, and that Joseph Demere having received his distributive share, as a legatee under the will, with the assent of the executors, such distributive share is not liable to be seized and sold, in satisfaction of a decree rendered against the executors, in a suit in which the legatee was not a party, when it is admitted by the executors they have in their hands sufficient assets to pay it. The assets of the testator, in the hands of his executors, are *first* liable for the payment of the decree. Let the judgment of the Court below be reversed.