CURTIN & TUMLIN, plaintiffs in error, *vs.* MUNFORD & GIL-
REATH, defendants in error.

1. Defendants entered into a written contract with plaintiffs by which
they agreed to pay for six tons of iron ore per day, at $3 00 per ton,
for a period of twelve months. Before the expiration of the twelve
months, one of the defendants procured the appointment of a receiver
to take charge of the business of his firm, "and to manage it so as
to make the most he can out of the same." During the period that
the receiver was in charge of the property, plaintiffs continued fur-
nishing ore. There was evidence to show that the business was man-
aged in the interest and for the benefit of the defendant who secured
the appointment of the receiver:

*Held,* that in a suit against the firm for the price of such ore, the defend-
ant was liable.

2. Where evidence was not objected to upon the trial, its admission is no
ground of error.

3. The verdict is supported by the testimony.

Receivers. Contracts. New trial. Practice in the Su-
preme Court. Before Judge McCUTCHEN. Bartow Superior
Court. March Term, 1873.

For the facts of this case, see the decision.

WOFFORD & MILNER; GEORGE N. LESTER, for plaintiffs
in error.

J. A. W. JOHNSON, for defendants.

WARNER, Chief Justice.

This was an action brought by the plaintiffs against the de-
fendants on an open account for the sum of $873 85, with a
bill of particulars annexed. On the trial of the case, the jury
found a verdict in favor of the plaintiffs for $466 28. A mo-
tion was made for a new trial on the following grounds: 1st.
"Because the verdict is strongly and decidedly against the
weight of the evidence." 2d. "Because the court erred in
permitting L. S. Munford to testify that he made his entries
in his book from slips of paper furnished the drivers who
hauled the iron ore." 3d. "Because the items sued on in

plaintiffs' account were created, if at all, by Cox, as receiver, and after the whole business of Curtin & Tumlin had been taken charge of by the court under a bill in equity, and that defendant, Tumlin, is not liable for said account so made after the business was in the hands of the court."

1. It appears from the evidence in the record that James Curtin and Tumlin were partners in running an iron furnace in Bartow county, under the firm name of Curtin & Tumlin. It also appears, from the evidence in the record, that on the 1st day of November, 1870, Curtin & Tumlin made a written contract with the plaintiffs, by which they agreed to furnish the defendants on an average of six tons of iron ore per day for the term of twelve months from the date of the agreement, for which the defendants were to pay the plaintiffs $3 00 per ton, monthly, or at the end of each month. The plaintiffs' account is for the balance due them for iron ore delivered in pursuance of that agreement. The record shows that an extract from the minutes of Bartow superior court was read in evidence, from which it appears that on the 3d day of December, 1870, an order was granted in an equity case, in which Tumlin was complainant, and James Curtin and Austin Curtin were defendants, (the bill not being in the record,) appointing a receiver to take charge of and manage the property of said partnership, and manage it so as to make the most he can out of the same and pay the debts due by the partnership, paying first those debts due to others than the parties to this bill; that the receiver make no new debts to bind the partnership in any way, and that he keep an account of his receipts, expenses, disbursements, payment of debts, etc., and make return of his actings and doings at the next term of the court. The record shows, that another extract from the minutes of the court was offered in evidence, from which it appears that a second order was made in the equity case between the same parties on the 17th day of December, 1870, in which it is recited that the receiver appointed by the first order had failed to give bond and security as required therein, and that John Cox had been suggested by the complainant, Tumlin, as a

proper person for receiver. It was ordered by the court that said Cox be appointed receiver of the partnership effects of Curtin & Tumlin, upon the same terms and conditions as expressed in the former order. The evidence in the record, that the iron ore was delivered by the plaintiffs to the furnace of the defendants, in pursuance of the agreement made on the 1st of November, 1870, is quite clear; that agreement, was made before any receiver was appointed, and the question is, whether the partners are bound to pay for it. There is no 'evidence in the record of a dissolution of the partnership of Curtin & Tumlin, by the decree of the court, or otherwise, except that Curtin has left the country. Cox, it appears, was appointed receiver at the instance of Tumlin, and, according to his evidence and Munford's, the furnace was run afterwards, when the plaintiff's ore was received and used, for the benefit of Tumlin. It is true that Tumlin denies it, and he is corroborated by Lyon, but the evidence in relation to that point in the case is conflicting. If the iron ore was delivered by the plaintiffs under the agreement made with Curtin & Tumlin, before the receiver was appointed, and was used for the benefit of Tumlin, after the receiver was appointed, then he ought to pay for it, and that was the question for the jury to decide under the evidence before them. Whether the receiver, after his appointment, received and used the iron ore delivered by the plaintiffs under the agreement of the 1st of November, 1870, under the order and direction of the court, or whether he received and used it under the direction and for the benefit of Tumlin, was a question of fact under the evidence in the record. There is no complaint as to the charge of the court to the jury, and the presumption therefore, is, that the court charged the law applicable to the facts of the case correctly.

2. If the evidence of Munford as to the manner in which the entries were made on his books, was objectionable, which is not at all apparent to us, from his testimony, still, it does not appear in the record, or in the motion for a new trial, that the admission of the evidence was objected to at the time of the trial.

3. Assuming that the jury, under the evidence, believed that the furnace was run by Cox for the benefit of Tumlin, and that the plaintiffs' ore was received and used for his benefit, then the verdict is quite moderate as to the amount found by them. The real object of the motion for a new trial was to have the verdict of the jury set aside on the ground that it was against the evidence. The other grounds taken in the motion are merely *colorable* to get rid of the verdict. The presiding judge, in the exercise of the sound discretion vested in him by law, refused to grant the new trial, and we are called on to control the exercise of that discretion. Upon what principle shall we control it? Shall we control it because he erred in not holding that the jury should have believed the witnesses for the defendants instead of the witnesses for the plaintiffs? What legal power or authority have courts to compel juries to believe the witnesses sworn on one side in preference to those sworn on the other? If the court before which the case was tried, which saw and heard the examination of the witnesses, has no such legal power or authority, much less has this court any such legal power or authority. It was never intended, when this court was organized, that it should be a tribunal to determine questions of fact, or to judge of the credibility of witnesses. One of the prominent objections of the people of this state to the establishment of a supreme court for the correction of errors was, that it would deprive them of the right of having questions of fact tried by a jury of the vicinage, as they had theretofore been accustomed. The reply was, that the supreme court was to be established for the correction of errors of *law*, and not to decide questions of *fact*, and such has been the general ruling of this court from its first organization up to the present time. Notwithstanding this general ruling of the court, fully one-third of its time is occupied in the argument of cases upon the facts, as if we were a jury to decide upon the facts and judge of the credibility of the testimony of witnesses. If parties and their counsel would observe this general ruling of the court in relation to motions for new trials on the ground that the verdict

of the jury is contrary to the evidence and the weight of the evidence, instead of coming here for the purpose of *experimenting* upon this court in the hope of obtaining a new trial, when no rule of law has been violated, it would save a great deal of time and unnecessary trouble.    We all know, from observation and experience, that as a general rule no one is ever satisfied when the judgment of a court, or the verdict of a jury, is rendered against him, and this court has no power to compel parties to be *satisfied*, but it has the power to compel parties to *acquiesce* when a lawful verdict and judgment has been rendered against them, and when that has been done, it is for the interest and welfare of the commonwealth that there should be an end of litigation, so far as that particular case is concerned.

Let the judgment of the court below be affirmed.