## DILLON *vs.* DILLON.

[This case was argued at the last term and decision reserved.]

1. In a suit by a reputed wife against her reputed husband for permanent alimony, there is no reason why he should not be estopped from denying her competency to contract marriage by reason of race or color, if he has in fact married her (though without a license or the usual ceremony), lived with her for many years as his wife, and reared a family of children by her. After thus recognizing and treating her as his wife, he should be bound to furnish her and the minor children with support. Public policy is promoted, and not obstructed, by applying the principle of estoppel in such a case. More especially is this true if he has procured an act of the general assembly to be passed reciting and declaring that "Whereas doubts have existed whether (naming her by a name intended to describe her for the occasion), of the county of Chatham, is entitled to the rights and privileges of citizenship; and whereas satisfactory proof has been furnished to establish her said rights and privileges; and whereas it is just and proper that said doubts should be forever removed: Be it enacted, that from and after the passage of this act, the said (naming her as before) and her children (naming them) be, and they are hereby, declared to be severally entitled to all and singular, the rights and privileges of citizens of Georgia, and to be fully capable, each or any of them, of inheriting, holding and receiving all manner of property, real or personal, by bequest, deed, or in any other manner whatever.

2. The court committed no error on the trial, the correction of which would or ought to vary the result. And the verdict of the jury was sufficiently comprehensive to dispose of all the material questions.

Husband and wife. Alimony. Estoppel. Before Judge TOMPKINS. Chatham Superior Court. October Term, 1877.

Mrs. Dillon filed a bill against her alleged husband for permanent alimony, under §1747 of the Code. Pending the case, a motion for temporary alimony and counsel fees was submitted. To this the defendant responded by denying that the complainant was his wife, by alleging that he had never contracted marriage with her, by charging that she was a person of African descent, having more than one-eighth of African blood in her veins, and for that rea-

son incapable of contracting lawful marriage with a white man, and by demanding a trial by jury of the issues involved.

A jury was impaneled and the court submitted to them the following questions :

· 1st. If complainant was a white woman, that is, had not as much as one-eighth or more of African or negro blood in her veins, then, under the evidence, would she be the wife of defendant ?

2d. Has the complainant one-eighth or more of African or negro blood in her veins ?

3d. ·Did the defendant procure or assent to the passage of the act of the legislature assented to December 21, 1857 ?

4th. Is the Rachel Black mentioned in said act the same person as complainant ?

5th. If the complainant is a negro by reason of having. as much as one-eighth of African or negro blood in her veins, then is she, under the evidence and the act of 1857, the wife of defendant ?

To the 1st, 3d, 4th and 5th questions the jury responded by their verdict " yes." To the 2d, that they could not agree upon a unanimous answer.

Whereupon the court decreed that the complainant was the lawful wife of the defendant.

A motion for new trial was made and overruled, to which the defendant excepted.

The remaining facts, so far as material, will be found in the opinion.

GEORGE A. MERCER, for plaintiff in error.

A. P. & S. B. ADAMS, for defendant.

BLECKLEY, Judge.

The points made and argued by counsel are many, but there is one broad principle that holds in its grasp the whole body of the case ; that principle is estoppel. The jury found

in effect, that there was a marriage in fact; and that finding was justified by the array of circumstances tending to establish such a marriage, which the record exhibits. Granting that some of the testimony was of doubtful admissibility, or even clearly inadmissible, enough remains to which no objection can be urged, to warrant the finding. For years and years, Mr. Dillon lived with Mrs. Dillon as his wife, recognizing and treating her as such. Of her, he begat children; and the parents and children were grouped as a family, and as such lived, openly, in the city of Savannah, the largest city of Georgia, and one of the most respectable cities of the world. If the marriage tie had been wanting, would this have occurred? Could it have occurred, in the midst of a moral and refined community, and under the eye of the police? The jury belonged to the vicinage, and could and did interpret the testimony in the light thrown upon it by the local *gloss.* They understood what such a mode of living in Savannah meant; whether it meant concubinage or matrimony. We believe its ordinary meaning, throughout Christendom, to be matrimony; and we are aware of no reason why it would or should be differently construed in Savannah. Of conduct, as of language, the ordinary meaning is to be accepted as the true meaning until a different sense, in the given instance, is established. When persons for a long period act, habitually, as married people generally act, there is a strong presumption that they have, at some time, and in some way, entered the marriage state—that they have acquired the rights, and assumed the obligations, of the marriage relation. How else can their every day, habitual actions be accounted for, without imputing criminality to the parties concerned? To reason from long continued cohabitation to marriage, is to class them with the many; while to reason from it to fornication or adultery, is to class them with the few. The jury found that Mr. Dillon and Mrs. Dillon were married. That finding benig correct, can Mr. Dillon shun his civil obligations to his family and to society, in the matter of furnishing support to his wife and minor children, on the

ground that the marriage, *de facto*, was void? Can he be heard to say that Mrs. Dillon is not a free white person, but a person of color; and that, therefore, she was under a legal disability to contract the marriage into which he and she entered, he being a white man? As is to be fairly deduced from the evidence, Mrs. Dillon is not black, but of a complexion approximating that of many white persons of pure blood. Her true classification in respect to race, cannot be accomplished, readily, by mere inspection. Examination, and the employment of scientific skill, would seem, from the evidence, to be requisite, in order to settle her extraction, in the absence of family history; and, perhaps, even with the aid of such history so far as the same is now attainable. It is thus not an open, bald case of the intermarriage of an African with a Caucasian. While the husband's lineage is certain, that of the wife is doubtful. Under these circumstances, can the husband (after marrying her, living with her as his wife for many, many years, rearing by her a family of children, some of them to the age of manhood and womanhood) institute a narrow search into her pedigree, that he may deny to her the full measure of support in her declining years to which, if she is truly and legally his wife, the law entitles her? Possibly, for some purposes he might raise the question of blood even now, but can he for this purpose? That is the practical inquiry with which we are at present concerned. We think he cannot evade her claim for support, or the claim of his minor children for support, by such means. In respect to alimony, he is estopped to deny that she is his lawful wife. It militates against no interest of society that we can think of, so to treat him. Such an application of the doctrine of estoppel is not obstructive of public policy, but promotive of it. Society, and each member of society—the mass and the individual—are benefitted by closing the mouth of any man against repudiating his family when they come to him for needed support. If he may cast them off, they will, in many instances, fall a weighty burden on the public. To allow a husband to in-

dulge in scruples about the pedigree of his old wife, when her youth, beauty and strength have all waned, and thus escape responding to her claim for reasonable alimony, would be unwise in policy, unsound in principle.

Though there was room for differences of opinion on what we have said thus far touching estoppel; there can scarcely be a doubt that, as Mr. Dillon procured the act of the general assembly to be passed, the provisions of which are set forth in the head-note, he is estopped by the foregoing facts, with that act superadded. He had the very question which he now attempts to raise, settled by that act. He caused the legislature to be informed by satisfactory evidence, that Mrs. Dillon was entitled to all and singular, the rights and privileges of a citizen of Georgia ; and the legislature solemnly declared, by means of the act, that she was. He must (in all civil rights and duties, at least) abide by this declaration, having himself been instrumental in procuring it to be made. Indeed, it seems to have been made wholly at his instance. If, in 1857, (the date of the act) she was entitled to all the rights and privileges of a citizen, she was entitled to be his wife, whether he married her before the act was passed or afterwards. The act declares her *status*, and to do so was within the competency of the legislature. That she was a free white person, though not affirmed expressly, is implied in the declaration of citizenship ; for at that period, to be a citizen of this state, was to be white, white persons only being then members of our body politic. The act does not make her white, but is conclusive evidence against Mr. Dillon, in this proceeding, that she is white. He is estopped to controvert it.

2. We are sure that if the court committed error on the trial, it was not such as to mislead the jury. They were not misled. By finding the fact of marriage, (which they did in finding that if Mrs. Dillon was white, then, under the evidence, she was Mr. Dillon's wife), and by finding that he procured or assented to the passage of the act above mentioned, and that she was the identical person called in

that act by the name of Rachel Black, enough was found to be the basis of a decree ; there being before the jury no controversy, so far as appears, except as to the right to alimony—none as to the amount.

Cited by counsel for plaintiff in error : Constitution of 1798 ; Code, §§4993, 4995, 4997, 4998, 5000 *et seq ;* Cobb's Dig., 1115, §21 ; 1 Kent's Com., 501, 504 ; Cooley's Con. Lim., 174-6, 393 ; Dwar. on Stat., 645 ; Sedg. on Stat. & Con. Law, 154, 151, 159 ; 1 *Kelly*, 249, *et seq.* ; 4 *Ga.*, 72, 208 ; 11 *Ib.*, 364, *et seq.*; 19 How., 393 ; Cobb's Dig., 1111, sec. 1 ; Cooley, 91, 92, 96 ; 7 *Ga.*, 92 ; 42 *Ib.*, 405 ; Sedgwick (*supra*), 166, 167 ; 8 *Ga.*, 222 ; Sedgwick (*supra*), 158, *et seq.* ; Cobb's Dig., 972 ; Code of 1863, §1600 ; 4 *Ga.*, 68 ; 6 *Ib.*, 100, 101 ; 14 *Ib.*, 185, 202 ; acts of 1842, p.182 ; 40 *Ga.*, 247 ; Code, §5145 ; Code of 1863, §1664 ; Irwin's Code, §1707 ; Constitution of 1865 ; Code, §§4988, 1708 ; 39 *Ga.*, 321 ; 14 *Ib.*, 199, 674 ; 15 *Ib.*, 361 ; 39 *Ib.*, 253 ; 30 *Ib.*, 679 ; 1 Kent's Com., 462 ; Cooley (*supra*), 96 ; 7 *Ga.*, 90, 92 ; 8 *Ib.*, 29 ; Cobb's Dig., 903, 995 ; 6 *Ga.*, 100 ; 4 Peters, 169 ; Hilliard on Tax., 360, §13 ; 52 *Ga.*, 272 ; Code, §3753 ; 46 *Ga.*, 110 ; Herman Estop., §§3, 4, 5, 322, 610, 621 ; 17 *Ga.*, 422 ; 57 *Ib.*, 181 ; 10 *Ib.*, 600 ; 2 Smith's L. C., 648, 753, 756 ; Herman (*supra*), 4, 52, 220, 224, 332, 334, 493, 543 ; 41 *Ga.*, 315 ; Code, §§3594, 3828, 7 ; 41 *Ga.*, 315 ; 16 *Ib.*, 416 ; 9 *Ib.*, 137 ; 55 *Ib.*, 262 ; 1 Par. on Con., 492 ; 3 *Ib.*, 414 ; 2 *Ib.*, 782 ; 53 *Ga.*, 469 ; Code of 1863, §1653 ; 39 *Ga.*, 173 ; Bou. Law Dic., "Marriage," §5 ; 1 Bish. on Mar. & Div., §§501, 540, 224, 233, 234 ; 4 Camp. N. P. R., 196 ; 1 Sawyer, 99, *et seq.;* 45 *Ga.*, 138 ; 9 *Ib.*, 151 ; 30 *Ib.*, 891 ; 48 *Ib.*, 192 ; Code, §3715 ; 44 *Ga.*, 638 ; Sedgwick (*supra*), 203 ; Code, §244, 245 ; 55 *Ga.*, 214, 667 ; 32 *Ib.*, 515 ; 59 *Ib.*, 485.

Cited by counsel for defendant in error : 30 *Ga.*, 173, *et seq.;* 11 *Ib.*, 54 ; 2 Bou. Dic., "Marriage"; Reeve's Domes. Rel., 307, and notes, 308 and note ; 9 Paige, 610 ; 13 Am. Rep., 733 ; 4 Edw. Ch., 107 ; Code, §3753 ; Brown's L. Max., 127, 146, note 4 ; Bou. Law Dic., 541 ; 1 Gr'l'f's Ev.,

§22; Herm. Estop., §§8, 10 ; 5 U. S. Dig., 411, §§46, 47, 49, 62 ; 55 *Ga.*, 99 ; L. & Eq. Reporter, Nov. 21st, p. 68 ; *Ib.*, Nov. 28, 602 : 8 *Ga.*, 211, 221 ; 10 *Ib.*, 342, *et seq.*; 53 *Ib.*, 466, 468; Dwar. on Stat., 56 ; Cooley, 159, 182 *n.* 2 ; 54 *Ga.*, 663, 664 ; 16 *Ib.*, 105 ; 35 *Ib.*, 127 , 34 *Ib.*, 309 ; 10 *Ib.*, 191 ; Cooley, 185–6 ; Herm. Estop., §143 ; Cooley, 172, 173 ; Dwar., 366, 367, 369 ; 8 *Ga.*, 216, *et seq.*; 5 *Ib.*, 201 ; 45 *Ib.*, 371 ; Cooley, 164, *et seq.*, 17 ; 1 Bish. Cr. Pro., §1033 ; Cobb's Dig., 1115, sec. 22 ; Sedgwick, 151, 144, 139 *n.* ; Cooley, 91, 92, 93 ; Sedgwick, 141 350 *n.* ; 17 *Ga.*, 572 ; 36 Barb., 449 ; 30 *Ga.*, 850 ; Sedgwick, 140 ; 4 *Ga.*, 212 ; Cooley, 185, 163, 181 ; 55 *Ga.*, 99 ; 16 Pick., 96, 97.

Judgment affirmed.