## UNDERWOOD v. UNDERWOOD; *et vice versa.*

Where proceedings are instituted in a court of another State to secure a divorce and alimony, and a decree of divorce is there granted and the question of alimony is reserved, and the case stands for a period of twenty years and falls into a class of cases styled "stale actions" under a rule of that court providing that, where no steps are taken in a case for a period of two years, no further step can be taken in the same unless

the persons proposing to take the step shall first give reasonable notice in writing to the other party or his attorney, but the plaintiff does not take steps until after the lapse of twenty years from the time the decree of divorce is rendered, and then, proposing to file an amendment asking for alimony, serves notice, not upon the defendant or upon one shown to be actually his attorney, but merely upon one who·was the attorney of record when the decree of divorce was rendered, the court is not shown to have jurisdiction of the defendant; and a judgment rendered upon the application for alimony will not be enforced against the defendant residing in this State.

SEPTEMBER 22, 1914.

Action upon foreign judgment. Before Judge Bell. Fulton superior court. May 20, 1913.

Mrs. Cordelia Underwood brought suit against H. C. Underwood, on a judgment for alimony which she had obtained against him in Kentucky. On the trial the court overruled a motion for a nonsuit, and, after hearing all the evidence, directed a verdict in favor of Mrs. Underwood for the amount sued for on the Kentucky judgment. The defendant excepted.

*A. H. Bancker* and *C. T. & L. C. Hopkins,* for plaintiff in error. *Green, Tilson & McKinney,* contra.

BECK, J. The controlling question in this case, and one that disposes of it in its entirety, is whether or not the Kentucky court, in which the judgment was rendered upon which the present suit is based, had jurisdiction of the person of the defendant. Whatever recitals as to service upon the defendant may be contained in the record of the case in the Kentucky court, the question as to whether or not there was legal service in some one of the ways provided by law upon the defendant can be inquired into. In the case of Knowles v. Gaslight &c. Co., 19 Wall. 59 (22 L. ed. 70), it is said: "But, in an action on a judgment rendered in another State, the defendant, notwithstanding the record shows a return of the sheriff that he was personally served with process, may show the contrary, namely, that he was not served, and that the court never acquired jurisdiction of his person." And in the case of Thompson v. Whitman, 18 Wall. 457 (21 L. ed. 897), it is said: "1. Neither the constitutional provision, that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered. 2. The record

of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist. 3. Want of jurisdiction may be shown either as to the subject-matter or the person, or, in proceedings in rem, as to the thing."

Touching the construction of the full faith and credit clause of the constitution of the United States, it is said in Black on Judgments, § 901: "It is fair to infer that the constitution means no more than that full faith and credit shall be given to the valid and lawful judgments of the courts of a sister State. But if, in point of fact, the court had no jurisdiction of the defendant, the sentence which it assumed to pronounce is no judgment at all; it is a nullity. It is true that a record must be held uncontrovertible. But, in the absence of jurisdiction, the account of the court's proceedings is not a record, for those proceedings would be coram non judice. For the very purpose, therefore, of according due faith and credit to the judgment, it must first be ascertained whether the document purporting to be a record is in reality entitled to that character. Nor should recitals of jurisdiction be conclusive on this point. For if, actually, there was no jurisdiction, no greater force or credit can be given such recitals than to any other part of the instrument."

There is no question that when the case in the Kentucky court was on trial resulting in the judgment of July 6, 1888, the defendant was represented by his attorney, and the question of service upon him and jurisdiction of his person for the purposes of that trial can not now be controverted. In that trial the following judgment was rendered: "This cause coming on to be heard on the pleadings and proof, and the court being sufficiently advised, it is therefore considered and adjudged that the plaintiff, Cordelia Underwood, be and she is hereby divorced from the bonds of matrimony with the defendant, H. C. Underwood, and restored to all the rights and privileges of a single woman. It is further considered that either party be restored to such property not disposed of at the commencement of this action as either he or she obtained from or through the other during marriage in consideration or by reason thereof. The prayer for alimony on the part of plaintiff is reserved and not determined in this judgment." In her suit resulting in the judgment or decree just set forth the plaintiff's

prayer was, "for divorce from the bonds of matrimony with the defendant, and for alimony in the sum of $——— per month, for her costs and all further and proper relief." In this action the defendant was served and appeared by counsel, Frank Hagan, Esq. On July 6, 1888, the suit resulted in a decree for divorce, in which the sole reference to the alimony was as follows: "The prayer for alimony on the part of plaintiff is reserved and not determined in this judgment." From the date of this decree, July 6, 1888, until October, 1908, more than twenty years, Mrs. Underwood did nothing whatever to call the case up again or have the alimony question disposed of. During these twenty years the reservation of the court of the prayer for alimony and the case itself stood unchanged on the docket. In 1893 the Louisville Chancery Court, in which the cause had been pending, ceased to exist, and the Jefferson Circuit Court was created, it being duly provided that all causes which had been pending in the old chancery court should be transferred to the last-named court, which had jurisdiction of divorce and alimony questions. There was a rule of practice known as rule 15, which was applicable to the latter court as well as the former, that where an action had been in court and remained for two years without any steps being taken in it, it was termed a "stale action," and no step could then be taken in the cause except "upon reasonable notice given in writing to the opposite party or his attorney." Shortly after the decree to which we have referred was taken against Underwood in 1888, he removed from Kentucky and became a resident of the State of Georgia. In October, 1908, over twenty years after the decree was rendered, Mrs. Underwood caused to be served upon Frank Hagan, Esq., the attorney who represented Underwood in 1888, a notice of an application to file an amended petition in the case. This service was made with a view, it would seem, of complying with the rule known as rule 15, the substance of which we have stated. If this service upon the attorney was not good as service upon the defendant or "his attorney," the court was without jurisdiction to take any further steps or to take the case from the docket of stale actions. Hagan had been the attorney of the defendant a little over twenty years before this service was had. There is nothing to show that after the taking of the decree of divorce Hagan continued to be the attorney of the defendant. He stood as the attorney of record in the proceedings that eventuated

in a divorce decree, and that decree, no appeal being taken therefrom, closed the case except as to the question of alimony. And we think alimony was a mere incident to the divorce proceedings. The defendant pleaded and offered to show that after the taking of the decree of divorce he paid off Hagan, and that Hagan afterwards had no further connection with the case. The defendant contends, that, after the lapse of twenty years from the time the decree of divorce was taken, there was a presumption that Hagan was no longer his attorney; that especially after the action had, under the rules of the court where the case was pending, been passed to the docket of stale cases and been styled a "stale action," it could not, after the lapse of this long period of time, be presumed that, because an attorney had once represented a party thereto when the action was a live case and liable to be taken up at any time, the attorney of record before the case got into the class of "stale actions" was still actually the attorney of the party; but that the presumption would be the reverse of this. It will be noted that rule 15, prescribing that where a case has been in court and remained for two years without any steps being taken in it, it will be termed a stale action, and no steps can then be taken except "upon reasonable notice to be given in writing to the opposite party or his attorney," uses the expression "his attorney," and not "his attorney of record." We think the contention of the defendant is sound.

"Where a plaintiff takes no step to bring his suit to trial for a long period of years, the presumption is that it has been abandoned." 1 Cyc. 756, citing a long list of authorities. "Inadvertence and the fact that one of plaintiff's attorneys did not know that a cause was not on the calendar were not a sufficient excuse for a failure for upwards of two years to bring a cause to trial, to require the court then to permit its further prosecution, even on terms; and such a cause was properly dismissed." Brown v. Gauss, 95 N. Y. Supp. 538 (17 N. Y. Ann. Cas. 242). "Where there was a judgment in favor of plaintiff, and on appeal a new trial was ordered, and the judgment had been assigned, but no notice thereof was given defendants, and thereafter plaintiff died, but no personal representative was appointed, or anything done for over ten years indicating an intention to continue the action, a motion by the assignees to be substituted as plaintiff—the only excuse for the delay being that the moving parties believed the defendants insolvent, but had learned of their responsibility,—was properly denied because

of laches." Hale *v.* Shannon, 58 App. Div. 247 (68 N. Y. Supp. 803). A lapse of twenty years after suit brought, without an effort on the part of the plaintiff to obtain a trial, will raise the presumption that he has abandoned the suit. Wilson *v.* Altemus, 2 Watts & S. 255, 260. "The failure of a plaintiff to take any steps towards maturing a cause against a defendant, beyond the entrance of a common order, for eleven years, there not being, during that period, even an order for continuance, and no appearance for some years of the case upon the docket of the court, is a discontinuance of said cause." Exchange Bank of Virginia *v.* Hall, 6 W. Va. 447.

We are of the opinion that the lapse of time stated above, between the time at which the case against this defendant became a "stale action" and the time when the notice that it would be taken up again was served upon the former attorney of this defendant, was such that the defendant had the right to presume that there was a discontinuance of the case or an abandonment of the same; and that even if it could be taken up again for the purpose of passing upon the question of alimony, which, as we have said, was merely an incident to the main trial, it could not be so taken up without service upon the defendant or one who was authorized to receive service for him. The court below ruled otherwise, and in this we think it erred; and for this reason the judgment is reversed.

What we have said above disposes of the case upon the controlling issue made in both of the bills of exceptions, and it is unnecessary to pass upon the specific assignments of error in the cross-bill of exceptions.

*Judgment reversed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*