## ADAMS *v.* ADAMS.

No. 13557.   JANUARY 15, 1941.   REHEARING DENIED FEBRUARY 14, 1941.

*Charles H. Kirbo* and *Vance Custer,* for plaintiff in error.

*L. H. Foster* and *S. P. Cain,* contra.

GRICE, Justice. ■ Error is assigned on the overruling of the motion of plaintiff in error to quash the service. He insists, the case having been brought to the October term, 1939, of Grady superior court, and no service thereof had before said term, and no order entered at said term pending for service subsequently thereto, that the entering of an order in chambers on December 9, 1939, which provided that the March term, 1940, be made the return term, and directed that a new process issue accordingly, was ineffective. At the time of issuing the order of December 9 the judge issued a rule nisi requiring the defendant to show cause before him in vacation at a time and place appointed, some three weeks hence, why temporary alimony should not be granted as prayed for. He appeared personally and by attorney, and made no motion to continue the hearing because he had not been served with the rule nisi. Temporary alimony must be based on a pending suit, either a suit for permanent alimony or a suit for divorce. If based on a suit for divorce which for lack of service had become void, it could well be argued that it was based on no suit at all. But where the appearance term has ended, with no service and no order entered thereat providing for service subsequent thereto, the suit does not necessarily become void, for the reason that it is within the power of the judge at a later term, for good cause shown, to grant an order providing for the issue of new process and for service on the defendant. See *Wood* v. *Wood,* 140 *Ga.* 59, 60 (78 S. E. 416), and cit.; *Sims* v. *Sims,* 135 *Ga.* 439, 442 (69 S. E. 545), and cit.

There was, then, a suit for divorce pending when the judge on December 9, 1939, included in his order, which provided that new process issue and that the March term, 1940, be made the return term, a rule nisi calling on the defendant to show cause why temporary alimony should not be granted. Temporary alimony may be granted in vacation, when a divorce suit is pending. Code, § 30-206; *Ray* v. *Ray*, 106 *Ga.* 260(2) (32 S. E. 91). "A petition for temporary alimony pending a divorce suit or a suit for permanent alimony is in the nature of an ancillary proceeding, and does not require the issuance and service of a new process returnable to another term of court. Upon it the presiding judge issues an order nisi which is served and under which the hearing is had." *Nipper* v. *Nipper*, 129 *Ga.* 450 (3) (59 S. E. 226). See *Williams* v. *Williams*, 137 *Ga.* 791 (74 S. E. 242) ; *Luke* v. *Luke*, 154 *Ga.* 800 (115 S. E. 666) ; *Bradley* v. *Bradley*, 168 *Ga.* 648, 650 (148 S. E. 591) ; *Hogan* v. *Hogan*, 148 *Ga.* 151 (95 S. E. 272) ; *Legg* v. *Legg*, 150 *Ga.* 133 (102 S. E. 829). The judgment brought before us now by writ of error is the granting of the temporary alimony and attorney's fees. On that hearing the action of the judge was properly uninfluenced by the defendant's motion to quash the service. Nothing that we rule as to this is to have the effect of depriving the defendant of his right to have his motion heard and determined, in so far as it affects the divorce case, when that case is in term time regularly reached for trial. Compare Code, § 24-2622.

■ It is insisted, that, having at the hearing shown that a valid decree of divorce between the parties was granted by a court of the State of Nevada on October 9, 1939, it was erroneous to grant the wife temporary alimony. The suit for divorce in the instant case was filed on June 23, 1939, and the temporary-alimony order passed thereon was entered on September 19, 1940. If the Nevada divorce was valid, then the relation of husband and wife had ceased. The mere definition of alimony negatives the idea that it can be awarded to one who had ceased to be a wife. Code, § 30-201. Compare *Hall* v. *Hall*, 141 *Ga.* 361 (80 S. E. 992) ; *Morgan* v. *Morgan*, 148 *Ga.* 625 (97 S. E. 675, 4 A. L. R. 925) ; *Pennaman* v. *Pennaman*, 153 *Ga.* 647 (112 S. E. 829) ; *Collins* v. *Collins*, 165 *Ga.* 198 (140 S. E. 501) ; *Foster* v. *Foster*, 178 *Ga.* 791 (174 S. E. 532). This necessitates a ruling on whether or not the judge was authorized to find that what happened in Nevada was no bar to the wife's right

to alimony, subsequently asserted in a different suit instituted by her in the courts of Georgia. The Nevada decree was based on a suit wherein the service was by publication, and hence is not controlled by what was ruled in *Drake* v. *Drake,* 187 *Ga.* 423 (1 S. E. 2d, 573), followed in *Dyal* v. *Dyal,* 187 *Ga.* 600 (1 S. E. 2d, 660), in both of which cases there was not only personal service, but an actual appearance by the wife. Here a judgment by default was entered against the wife, and the cause proceeded to final decree ex parte. True, the wife thereafter filed a motion to open the default and to vacate the judgment, based on the sole ground that her illness had prevented her from appearing, accompanying her motion with a written defense; but her motion was denied. It is also true that at the hearing now under review there was in evidence a copy of section 8673 of the Nevada Compiled Laws of 1929, as follows: "Civil actions in the District Courts shall be commenced by the filing of a complaint with the clerk of the court and the issuance of a summons thereon; provided, that after the filing of the complaint a defendant in the action may appear by answer, demurrer, or notice of motion filed in the cause, except motions to quash service, or denying the sufficiency of process, or the jurisdiction of the court over the subject-matter, or the person, whether the summons has been issued or not, and such appearance shall be deemed a waiver of summons." The motion to open the default, and to set aside the decree, and to be allowed to plead to the merits, which was filed by Mrs. Adams, might for some purposes have constituted a general appearance on her part, as has been held by some courts. 6 C. J. S. 32, 33. But if so treated, it can not be said that she is thereafter concluded from collaterally attacking the judgment or decree on the ground that it was void for want of jurisdiction, on account of a fraud practiced by the complainant on the court. Such motion might estop her from challenging the court's jurisdiction as to her, but it could not revivify a decree void because jurisdiction was dependent on the complainant's bona fide residence in the State when in fact no basis existed for the exercise of such jurisdiction.

Notwithstanding the provision of the Nevada law, and notwithstanding her motion to vacate the judgment there rendered, together with her offer to plead to the merits, she could in the courts of this State attack the Nevada court proceedings on the ground of

fraud, to wit, that her husband was not at the time a bona fide resident of that State. His averment that he was a resident was contained in a suit begun and concluded when she was a non-resident of that State; and when she tried to appear therein she was not permitted to do so. Under such circumstances, the recital in the divorce proceedings of a finding that the court has jurisdiction of the plaintiff therein is not conclusive, and the decree may be collaterally attacked for fraud in its procurement. *Durden* v. *Durden,* 184 *Ga.* 421 (191 S. E. 455), and cit. If the plaintiff therein merely acquired a residence in Nevada for the purpose of obtaining a divorce, this is not sufficient to give the court of that State jurisdiction, and it was an imposition on the court for him to represent himself as being a bona fide resident of Nevada, and was such fraudulent conduct on his part as rendered nugatory the decree entered therein. *Matthews* v. *Matthews,* 139 *Ga.* 123 (76 S. E. 855) ; *Cochran* v. *Cochran,* 173 *Ga.* 856 (162 S. E. 99). As was observed in the last-cited case, as to the effect of some one physically handing to her, while out of the State, a copy of the summons and complaint for divorce, "this constituted no personal service whatever."

■ Our next inquiry is, was the judge authorized to find that the Nevada decree was void on the ground that the plaintiff therein had never acquired a bona fide residence in that State? The parties were married in 1925. There was no issue born of the marriage. At the time of the marriage the wife was residing at Climax, Decatur County, Georgia. They were married in Qincey, Florida; and before their separation some thirteen years later, they had lived in several different places, but were residing in Climax at the time of the separation. The husband's divorce suit was filed in the district court of Washoe County, Nevada, September 5, 1939. The final decree therein was entered on October 9, 1939. At the hearing now under review, on August 29, 1940, he testified as a witness in his own behalf, and other evidence was introduced. From the proofs as a whole the judge was authorized, if indeed he was not required, to find the following state of facts: A man whose married life had run none too smoothly leaves his wife in this State, and without knowing a soul in Nevada, and having no correspondence with anybody about getting employment in the latter State, goes there, and on the day of his arrival, or the next, consults a

lawyer about obtaining a divorce for him; and reaching Nevada on July 24, files suit for divorce on September 5, 1939, in which he alleges that he is at the time a citizen of Nevada, and that for a period of more than six weeks last past has been a bona fide resident of said State, and has continuously resided and been physically present and domiciled during all of said period in the State of Nevada; and on October 9, 1939, obtains a decree of divorce, said decree reciting as one of the findings of fact that "the plaintiff is a citizen of the United States and of the State of Nevada, and is now, and for a period of more than six weeks last past has been, a bona fide resident of said State, and has continuously resided and been physically present and domiciled during all of said period in the State of Nevada, and now resides and is domiciled in the County of Washoe, State of Nevada;" the jurisdiction of the Nevada court being based on said allegations and said findings; and on the next day leaves the State of Nevada and has never returned, bringing with him a little over $5 of the $700 which he had when he reached Nevada, he not having been engaged in any employment in the meantime. He asks a court in Georgia to recognize and enforce such a decree. In declining to do so, the court did not err. *Cochran* v. *Cochran*, and *Durden* v. *Durden*, supra. In view of the other portions of his testimony, the judge was not compelled to accept his statement on oath that he did not go to Nevada for the purpose of obtaining a divorce. *Lewis* v. *Patterson*, 191 *Ga.* 348 (12 S. E. 2d, 593).

■ One other contention remains to be noticed. It is insisted that the evidence demanded a finding that at the time of the institution of the instant case the defendant (plaintiff in error here) was not a resident of Grady County where the suit was filed. We can not agree to this contention. It is true that there was evidence from a number of witnesses that it was their impression and understanding that he was at the time a resident of Decatur County; others swore that his acts and conduct were such as to indicate that he was a resident of that county, and still others that they regarded him as a resident thereof. These were mere conclusions, with no facts stated that required such a conclusion. On the other hand the witness Chason testified: "I lived in Grady County the last part of 1939, and I live there now. I moved there along the last of October or the first of November. My father

lives there, and I visited there during 1939. I know Mr. Adams, and I have seen him at my father's house. He slept there sometimes. I don't know whether or not he boarded there, but he stayed there some time. I saw him there in July, 1939, before he went off to Nevada, and the next time I saw him I had moved to Mr. Jones', and he was there. He stayed there while I was there. He was gone about three months. I don't know whether he stays there now, but he stayed there while I was there. I was there from the last of October to nearly Christmas, and he was boarding there then." L. P. Johnson testified by affidavit, that "deponent lived near Zora Jones in Grady County; that he had seen J. S. Adams passing his home almost daily going to and from Zora Jones' home ever since plaintiff and defendant separated, except during the late summer and fall of 1939, when it was reported that the defendant had gone to Nevada; before he left for Nevada the defendant drove a car with a Georgia tag on it, but when he came back he had a Nevada State tag on said car; since his return, affiant has seen Adams' car parked at Zora Jones' every time affiant passed; affiant was at Zora Jones' place about three weeks ago, and Adams was sitting on the porch, barefooted, with his trousers rolled up nearly to his knees, the time being about nine o'clock in the morning; the frequency of the trips to and from Zora Jones' home before he went to Nevada are practically the same since he returned." The provisions of the Code, § 79-401, are as follows: "The domicile of every person of full age, and laboring under no disability, is the place where the family of such person shall permanently reside, if in this State. If he has no family, or they do not reside in this State, the place where such person shall generally lodge shall be considered his domicile." Since it appears without dispute that he and his wife were permanently separated, the evidence above referred to justified the finding that at the time of the filing of the suit he was a resident of Grady County. *Gilmer* v. *Gilmer*, 32 *Ga.* 685; *Forlaw* v. *Augusta Naval Stores Co.*, 124 *Ga.* 261, 268 (52 S. E. 898), and cit.; *Smith* v. *Smith*, 136 *Ga.* 197 (71 S. E. 158). For the reasons stated in *Lewis* v. *Patterson*, supra, this follows, irrespective of his own positive statement on that subject.

■ There was no complaint that the amount awarded as temporary alimony and attorney's fees was excessive, the sole question being as to the power of the court to make an award of any amount.

*Judgment affirmed. All the Justices concur,* except

DUCKWORTH, Justice, dissenting. The evidence shows that before the separation the defendant resided with his family in Decatur County. Upon the trial the defendant testified that, "Since April of last year, I have lived everywhere. . . I did not board in Grady County. . . I removed my residence from Decatur County on July 20, 1939. Up to that time I voted in Decatur County." The evidence relied upon by the wife to overcome this positive testimony as well as the circumstance of previous residence is the testimony of the witness Johnson, who testified in effect that since the date of separation he had frequently seen the defendant going to and from the residence of Zora Jones. While the circumstantial-evidence rule (Code, § 38-109) is applicable to criminal cases and does not apply in the same way to civil cases, a rule very similar is applicable in civil cases. This rule may be stated to be that the circumstances relied upon must be shown by a preponderance of evidence to be consistent with the hypothesis claimed, and inconsistent with any other reasonable hypothesis. *Georgia Railway & Electric Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076) ; *Radcliff* v. *Maddox,* 45 *Ga. App.* 676 (2) (165 S. E. 841). The circumstances shown by the wife create a mere inconclusive inference, a mere scintilla, and can not be regarded as evidence. Hence the evidence demands, as a matter of law, a finding that the defendant was not a resident of Grady County when the suit was filed. Consequently no valid suit for divorce was pending, and an award of temporary alimony was unauthorized. Code, § 30-202.