CHRISTOPHER *v.* CHRISTOPHER; *et vice versa.*

362

Nos. 14922, 14925. SEPTEMBER 8, 1944. REHEARING DENIED OCTOBER 7, 1944.

*Roy S. Drennan, Claud F. Brackett,* and *Philip Etheridge,* for plaintiff in error.

*Charles G. Bruce,* contra.

DUCKWORTH, Justice. ■ The assignments of error which the defendant in error moves this court to dismiss and strike from the bill of exceptions plainly set forth the rulings complained of, and show that exceptions pendente lite thereto were duly filed and certified. These exceptions pendente lite were brought up to this court in the record and complain of rulings on which error is assigned in the final bill of exceptions, and are duly certified by the trial court. In *Alexander* v. *Chipstead,* 152 *Ga.* 851 (111 S. E. 552), it was ruled that, "when the final bill of exceptions shows that exceptions pendente lite were properly filed in the trial court, and when the contents of such exceptions pendente lite are recited in the bill of exceptions, or a copy thereof appears in the transcript of the record, an assignment of error in the final bill of exceptions, either upon the exceptions pendente lite or upon the rulings therein excepted to, is sufficient." The assignments of error here attacked are sufficient under the above authority, and the motion to dismiss is denied.

■ The petitioner, at the time she met the defendant, was admittedly a married woman with an action for divorce pending in a court in New Orleans, Louisiana. It appears that before the conclusion of that litigation she obtained, in the State of Chihuahua, Mexico, a divorce from her former husband. The present defendant, having filed what he denominated a plea to the jurisdiction, but which the trial court correctly construed as mere allegations setting up a defense to her action, attacked the validity of that divorce on the ground that the court was without jurisdiction, since the petitioner established no actual residence in Mexico; and he contended that the divorce was a fraud upon the court and upon himself and society as well and should be treated by the courts of this State as null and void and of no legal effect. The petitioner undertook to show that the divorce was a valid one, and that she was, therefore, competent to contract a valid marriage with the defendant. While she also introduced evidence to support the grounds of divorce alleged against the defendant, we have not set out that evidence, since in our opinion the case turns on the question whether the Mexican divorce was one which should be recognized as valid in this State. The "full faith and credit" clause of the Federal constitution has no application here, since that provision has reference only to the recognition, where a di-

vorce is involved, of such as are obtained within the courts of the United States. Comity alone could authorize recognition of the Mexican divorce. "The general rule governing the comity of nations is that in a proper case the laws and judicial proceedings of one State will be enforced in another State, provided they do not involve anything immoral, contrary to public policy, or violative of the conscience of the State called upon to give them effect." *Joyner* v. *Joyner,* 131 *Ga.* 217, 220 (62 S. E. 182, 18 L. R. A. [N. S.] 647, 127 Am. St. R. 220). It is fundamental that comity will not be applied where a divorce is obtained in a foreign State under circumstances which offend the public policy of this State as found in its constitution and statutes and the decisions of its courts.

A marriage relationship, when once established, can not be dissolved in this State except upon one of the eight absolute grounds specified in the Code, § 30-102, and the discretionary grounds of cruel treatment and habitual intoxication mentioned in section 30-104. A specification of persons able to contract marriage is given in section 53-102. They must be of sound mind and, if a male, at least seventeen years of age and, if a female, at least fourteen years of age, and laboring under none of the following disabilities: 1. Previous marriage undissolved. 2. Nearness of relationship by blood or marriage as explained in the Code, § 53-105. 3. Impotency (at time of marriage). Marriages of persons unable to contract marriage are void, but, until such marriages are declared void by a competent court, the children of such marriages shall be legitimate. Section 53-104. It was expressly ruled in *Irving* v. *Irving,* 152 *Ga.* 174 (108 S. E. 540, 18 A. L. R. 88), that the provisions of section 53-104, relating to the legitimacy of children, do not refer to a marriage where at the time either of the parties had a previous marriage undissolved; and that in such cases the later marriage is void and a nullity, and may be so treated by the parties; and that a decree of court declaring it void was unnecessary. See also *Brown* v. *Parks,* 169 *Ga.* 712 (151 S. E. 340, 71 A. L. R. 271); *Pickren* v. *Pickren,* 190 *Ga.* 609 (10 S. E. 2d, 40); and *Barnett* v. *Barnett,* 191 *Ga.* 501 (13 S. E. 2d, 19), holding absolutely void a marriage entered into between parties where the plaintiff had a living spouse from whom no divorce had been obtained. Therefore it must be accepted as a matter of

law that, in the absence of a dissolution of her previous marriage by a valid divorce, the petitioner in the present case was unable to contract a legal marriage with the defendant. If not his wife, then she is not entitled to alimony and attorney's fees. *Morgan* v. *Morgan,* 148 *Ga.* 625 (97 S. E. 675, 4 A. L. R. 925) ; *Foster* v. *Foster,* 178 *Ga.* 791 (2) (174 S. E. 532) ; *Collins* v. *Collins,* 165 *Ga.* 198 (140 S. E. 501). Hence, the validity of the Mexican divorce obtained by the petitioner is open to consideration, and, if void, it follows that she was not able to contract a valid and legal marriage with the defendant under the laws of this State. The Mexican law, a translated copy of which was introduced in evidence, does not purport to provide for a divorce by mutual consent independently of an actual domicile. Article 23 provides that the competence of the court may be fixed by an express or tacit agreement, and that an express submission arises when the interested parties clearly and positively waive the privilege granted them by law and designate precisely the judge who will try the case. Assuming, but not deciding, that the "competence" mentioned does not refer merely to the judge trying the case but to the tribunal in which he presides, and that the "express submission" is to such tribunal, and not merely an agreement that a designated judge shall act in a court having jurisdiction, and that as contended by the petitioner a compliance with these provisions established jurisdiction under the Mexican law, such a method of acquiring jurisdiction offends the clear postulate of this State that jurisdiction in a divorce case can not be conferred. But the Mexican law itself does not stop here. It contemplates an actual residence, as shown by the provision of article 22 that in the case of a mutual-consent divorce the judge trying the cause is one "presiding over the place of residence of either party;" and by article 24 it is provided that, "For the effects of art. 22, the place of residence will be proved by the respective registry records of the municipality" in which the party resides. A copy of the entire divorce proceedings, introduced in evidence, disclosed that the petitioner made a mock effort to comply with the requirements of residence, falsely filing in the prescribed registry a declaration of residence in Ciudad, Juarez, Bravos District C, Chihuahua, Mexico; and that afterwards a certificate of residence, dated August 23, 1933, was issued and filed in court as proof of residence, which

she alleged in her petition filed on October 11, 1933, and pursuant to which a decree of divorce was granted on the same date and a certificate issued on October 14, 1933. The record also shows a written answer filed by her former husband, Arthur Lee Whitmire, reciting his residence elsewhere, that he was then a transient in Mexico, admitting all the allegations of the petition, and praying that a divorce be granted. Notwithstanding the false representations of residence recited in the decree, the petitioner admitted on the trial of the present case that she never went to Mexico. Thus the decree was essentially a "mail-order" divorce, obtained by fraud and collusion, and rendered by a court without jurisdiction of the parties and was void. *Cochran* v. *Cochran,* 173 *Ga.* 856 (162 S. E. 99) ; *Adams* v. *Adams,* 191 *Ga.* 537 (13 S. E. 2d, 173) ; *Barnett* v. *Barnett,* 191 *Ga.* 501 (supra). Being thus a void foreign judgment of the State of Chihuahua, Mexico, it was subject to collateral attack. *Milner* v. *Gatlin,* 139 *Ga.* 109 (2 a) (76 S. E. 860) ; *Portman* v. *Mobley,* 158 *Ga.* 269, 273 (123 S. E. 695) ; *Green* v. *Whatley,* 158 *Ga.* 628, 633 (123 S. E. 871) ; *Durden* v. *Durden,* 184 *Ga.* 421 (191 S. E. 455). No principle of comity can be invoked to give extra-territorial effect to a judgment procured by fraudulent representations in order to obtain jurisdiction of the court. *Matthews* v. *Matthews,* 139 *Ga.* 123, 125 (76 S. E. 855). The petitioner, being an undivorced married woman at the time of her purported marriage to the defendant, was not legally competent to contract a valid marriage with him, and such marriage was void. Not being his wife, she was not entitled to maintain the present action for divorce, alimony, and attorney's fees. It follows that the trial court erred in overruling the defendant's motion for new trial.

■ But it is contended that, even though the Mexican divorce was invalid, the defendant is estopped by his conduct from assailing it and hence, for the purpose of adjudicating the issue here, it must be treated as valid. Under the evidence, the jury would have been authorized to find that the defendant encouraged or collaborated with the petitioner in obtaining the Mexican divorce, and that he seeks to treat it as invalid only after ten years of consorting with her and when confronted with a claim for alimony. As between individuals, where no question of the general welfare of society or public policy is involved, the principle of estoppel

runs throughout the law. "Although an act be unconstitutional and void, it will operate as an estoppel upon the party applying for it, and procuring its passage and accepting its benefits." 2 Herman, Commentaries on the Law of Estoppel and Res Judicata, p. 1198, § 1068, citing, among other cases, *Robinson* v. *Bank of Darien,* 18 *Ga.* 65. But the consideration that would ordinarily be shown to one wronged by the party against whom estoppel is sought must yield to the public interest in so important a matter as the marital status of the citizens of this State. "By constitutional provisions, statutory enactments, and judicial pronouncement, a public policy has been declared and enforced, looking to the use of the closest scrutiny in all cases that affect the severance of the matrimonial relation." *Jones* v. *Jones,* 181 *Ga.* 747 (2) (184 S. E. 271). That this public policy can not be circumvented by the action of individuals, is made manifest by the provision of our Code, § 102-106, which declares that "Laws made for the preservation of public order or good morals cannot be done away with or abrogated by any agreement." *Pennaman* v. *Pennaman,* 153 *Ga.* 647 (112 S. E. 829), while not identical on its facts, is controlling in principle here. There, the wife, in a state of separation from the defendant, brought an action for alimony and attorney's fees. He defended on the ground that she was not entitled to alimony because at the time of their purported marriage she had a living husband from whom she had not been divorced. She insisted that he was estopped from questioning the validity of her marriage to him because he had married her while knowing all the facts which he alleged. The record, which we have examined, shows that each of the parties had a living spouse from whom no divorce had been obtained, and that each party knew the other's marital status. Nevertheless, the defendant married the petitioner and lived with her as her husband for more than twenty-five years. The trial judge passed an order reciting that since the evidence showed that the parties were not lawfully married, the doctrine of estoppel could not be applied to the defendant as against his defense, and that no discretion had been exercised by the court. This court affirmed that judgment. Accordingly, it must be held that the defendant here did not, by entering into a bigamous marriage after encouraging or collaborating with the petitioner in obtaining the Mexican divorce, estop himself from

insisting upon a judgment in this State upholding its public policy and refusing to sanction the illegal relationship which he maintained with the petitioner, who is shown to have obtained in another country an invalid divorce by fraud and collusion.

*Dillon* v. *Dillon,* 60 *Ga.* 204, cited and relied on by the defendant in error, is distinguishable on its facts. There, the defense was, not that a former marriage existed which would make the second marriage bigamous, but that the petitioner was not able to contract a valid marriage with the defendant, a white man, because she had more than one-eighth African blood in her veins, and therefore was not a white person. This contention was foreclosed against him by the fact that the legislature had, at his instance, in December, 1857, after a hearing as to her status, declared her to be a person "entitled to all and singular the rights and privileges of the citizens of Georgia." Since the record in this court shows that the doubt resolved by the legislature, affecting the question of her citizenship, was specifically whether or not she was a white person, though not recited in the act itself, the pronouncement by the legislature necessarily established as a matter of law the fact, not open to question in a case of that kind, that she was a white person in December, 1857, and, consequently, she was in nature and in fact such a person from the date of her birth. Hence the defense that she was incompetent to contract a valid marriage with the defendant, on the asserted ground that she was a person with more than one-eighth African blood in her veins, necessarily falls, since a contention of fact which is overborne by a valid legislative act must be disregarded. *Griffin* v. *Augusta & Knoxville Railroad,* 72 *Ga.* 423 (2 d) ; *Harvey* v. *Savannah,* 59 *Ga. App.* 12 (199 S. E. 653). The court broadly ruled that the defendant, having married the petitioner and lived with her for many years openly as husband and wife, rearing a family of children by her, was for such reason alone estopped from denying her competency to contract the marriage with him; but the court said that, while there was room for a difference of opinion in that respect, there could scarcely be a doubt as to the defendant being estopped by his act in procuring the passage of the law declaring the petitioner's status as a citizen at a time when only white persons were members of our body politic. It will be noted that the ruling as to the defendant being estopped, independently of his procurement

of the legislative act, was made in a case where the alleged incompetency was only by reason of the alleged fact that the petitioner was not a white person; and it is not to be inferred that such a ruling would have been made if the marriage to the defendant had been bigamous, as in the present case, and hence an affront to society and against public policy. This paramount consideration of public policy was not overlooked by the court but applied in the opinion, and it was observed that, for reasons stated, public policy (a bigamous marriage not being involved) would be conserved rather than militated against under the facts presented. The court also said that it was not an open, bald case of the intermarriage of an African with a Caucasian. As pointed out in the *Pennaman* case, supra, which controls here and in which a bigamous marriage was involved, the *Dillon* decision is distinguishable therefrom.

■ The rulings made in the second and third divisions of the opinion necessarily conclude, in favor of the plaintiff in error, the following questions presented by him: 1. That the court erred in overruling his motion to dismiss the petitioner's plea of estoppel and in awarding $350 attorney's fees. 2. That the court erred in a portion of its charge (not set out in detail in the statement of facts) in submitting to the jury, in connection with its charge as to the conditions under which the petitioner would be entitled to a verdict of divorce, the question whether or not the defendant was estopped to deny the validity of the Mexican divorce, and the competence of the petitioner to contract a valid marriage with him. The rulings control, adversely to the plaintiff in error, his contentions: 1. That the court erred in overruling his motion to have tried, first and apart from the question whether or not the petitioner was entitled to a verdict of divorce on grounds alleged, the special plea, which he denominated a plea to the jurisdiction but which the court correctly held to be merely defensive in nature. 2. The contention that because the special plea was, as the defendant alleged, a plea to the jurisdiction, the issue made by it should not have been tried simultaneously with the question of the right of the petitioner to a verdict of divorce on grounds alleged. The direction by the court that the issues be tried together was not error for the reason assigned. No opinion is expressed as to the admissibility of certain evidence which was offered in support of the petitioner's alleged ground of cruel treatment, and

to which complaint is made in a special ground of the motion for new trial.

The rulings control, adversely to the defendant in error, the question raised by her cross-bill of exceptions as to whether or not the court erred in overruling her general and special demurrers to the defendant's special plea as amended, in which amended plea he attacked the Mexican divorce and the competency of the petitioner to contract a valid marriage with him. Assuming but not deciding that some or all of the grounds of demurrer would have been meritorious in a case where public policy was not involved, the defendant's plea as amended was sufficient to withstand the objections urged in the present case, and it has not been deemed necessary to set them out in detail in the statement of facts. The assignment of error on the judgment overruling the petitioner's motion to dismiss the defendant's special plea is also controlled adversely to her by the rulings made in the second and third divisions of the opinion.

*Judgment reversed on main bill of exceptions, and affirmed on cross-bill. All the Justices concur.*