Almand, Justice.
The plaintiff (hereinafter referred to as the husband), brought a petition against his wife to annul their marriage on the ground that the wife, at the time of the marriage and continuously since, was impotent. The wife, answering the petition, denied the allegations as to impoteney, and sought an award of temporary and permanent alimony and attorney’s fees. At an interlocutory hearing the judge ordered payment to the wife of temporary alimony and attorney’s fees. The husband by a writ of error seeks a review of this judgment.
The undisputed evidence shows: The parties were married in June, 1953, and lived together as husband and wife until the first part of September, 1954; the wife since she was 14 years of age has been permanently and completely paralyzed below the 10th thoracic level, having no sensory perception and no motor *366 ability or any use of her body below the level of the umbilicus, which includes the abdominal muscles, the sphincter muscles of the bladder and anus, and all the muscles of her legs; the husband knew of this condition prior to their marriage, and was fully advised as to her physical condition prior to their marriage by his own physician; the wife was capable of having sexual intercourse and becoming pregnant; there was no malformation in her genital organs; during the time they lived together they had sexual relations, but because of the paralyzed condition of the wife’s muscles she experienced no feeling when the act was being performed. The husband’s physician had examined the wife and testified that her condition was permanent and incurable; that she was incapable during the act of intercourse of having an orgasm or crises of sexual excitement; that impotency in a female is less well defined than in a male, and from a medical standpoint impotency was due either to a malformation of the genital organs or to some abnormality of the female genitals, so that intercourse is either impossible or unpleasant; that he was not prepared to give his opinion that the mere failure of the female to have an orgasm constituted impotency; that an orgasm by the female was necessary to the complete act of sexual intercourse. Two physicians testified for the wife that her sexual organs were normal, and that she was capable of having intercourse and becoming pregnant.
. The contention of the husband is that the undisputed evidence shows that the wife was at the time of the marriage, and is now, permanently incapable of performing the complete act of sexual intercourse; that the marriage was void ab initio under the provisions of Code §§ 53-102, 53-104; and there being no valid marriage between the parties, no alimony could be allowed to the wife under the rulings in Morgan v. Morgan, 148 Ga. 625 (97 S. E. 675, 4 A. L. R. 925), Mackey v. Mackey, 198 Ga. 707 (32 S. E. 2d 764), and Eskew v. Eskew, 199 Ga. 513 (34 S. E. 2d 697), and therefore the trial judge was wholly unauthorized to allow alimony to the wife.
The excellent briefs of counsel for both parties cite many legal and medical authorities dealing with the question of what constitutes impotency in a female. They cite no legal authority, nor have we found any, which holds that a female with normal *367 genital organs is impotent because during the act of sexual intercourse she is incapable of having an orgasm. Though Code § 53-102 declares that a person laboring under the disability of impotency cannot contract a marriage, there is no statute which defines the word “impotency.” This court, in Long v. Long, 191 Ga. 606, 607 (13 S. E. 2d 349), taking the definition from 17 Am. Jur. 223, § 141, said: “Impotency denotes a state of permanent inability on the part of one of the parties to perform the complete act of sexual intercourse”; but we have found no legal authority that says what constitutes a “complete act of sexual intercourse.” In Payne v. Payne, 46 Minn. 467 (49 N. W. 230, 24 Am. St. R. 240), impotency was defined as being substantially the “want of potentia copulandi, and not merely incapacity for procreation.” In Anonymous, 89 Ala. 291 (7 So. 100, 7 L. R. A. 425, 18 Am. St. R. 116), impotency was defined as being substantially the same as physical incapacity, or being powerless to consummate the marital object — the act of gratifying sexual desire. Mere sexual weakness or frigidity has been held not to constitute impotency. G. v. M., 10 App. Cas. 171 (1884-85). In H. v. P., 3 L. R. P. & D., 126, it was said that the impediment in the way of intercourse must be physical. See Griffith v. Griffith, 162 Ill. 368 (44 N. E. 820); J. G. v. H. G., 33 Md. 401 (3 Am. Rep. 183); 1 Bishop on Marriage, Divorce and Separation, §§ 765-783.
In the reports of the early English cases, where impotency was the ground for annulment of a marriage, it was the practice of the trial courts to grant or deny an annulment upon the testimony of physicians who, on the direction of the court, had examined the party charged with being impotent. The high value placed by the courts upon evidence given by medical experts appears as early as the Justinian Code, which made provision for the use of medical experts in cases involving pregnancy, sterility, impotency, and insanity, one of the precepts of the code, freely translated, being: “The medical expert is not used to proper or greatest advantage if he is regarded simply as an ordinary witness, appearing for one side or the other; his function is rather to assist the judiciary by impartial interpretation and opinion based on his specialized knowledge.” Yol. 3, No. 2, Journal of Public Law, “Development of Forensic Medicine,” *368 p. 304 (Emory University Law School, Georgia). Courts generally recognize that proof of impotency rests primarily on the testimony of medical experts. Gore v. Gore, 93 N. Y. S. 396; Le Barron v. Le Barron, 35 Vt. 365; Bissell v. Bissell, 93 N. J. Eq. 537 (117 Atl. 252).
The authorities on medical jurisprudence are not in agreement as to what constitutes impotency in a female capable of having sexual relations but incapable of experiencing an orgasm. See 2 Taylor’s Principles and Practice of Medical Jurisprudence (7 ed.), pp. 3-5; American Illustrated Medical Dictionary, Dorland (22 ed.); 3 Wharton & Stylle Medical Jurisprudence (5 ed.), p. 113; 3 Gray’s Attorneys’ Textbook of Medicine (3 ed.), ch. 301.
As judges, by reason of practice and experience in certain matters, we might be able to form an opinion on a given state of facts, but where the correctness of our conclusion is dependent upon facts in the field of medical science, we had rather abide by the opinions of experts in that field on the question of whether the inability of a woman in the normal course of sexual intercourse to experience an orgasm renders her impotent. The medical authorities being in disagreement as to this matter, we, as non-experts, should not rush in where those competent to judge fear to tread. As Chief Justice Bleckley said in Hunt v. State, 81 Ga. 140, 142 (7 S. E. 142), “Upon a question of sexual intercourse the experience and sagacity of jurors might very .well be trusted to run the general logic of the case.” It cannot be said that the evidence in the instant case demanded a finding that the wife was impotent and that the marriage was invalid.
Whether the husband’s knowledge of the wife’s condition at the time of the marriage now estops him from asserting the invalidity of the marriage, need not be passed upon at this time. In this connection, see Code §§ 53-102, 53-104; Dillon v. Dillon, 60 Ga. 204; Pennaman v. Pennaman, 153 Ga. 647 (112 S. E. 829); Christopher v. Christopher, 198 Ga. 361 (31 S. E. 2d 818); Bell v. Bell, 206 Ga. 194 (56 S. E. 2d 289); Phillips v. Phillips, 211 Ga. 305. The ruling in Moss v. Moss, 147 Ga. 311 (5) (93 S. E. 875), concurred in by four Justices, that “Impotency of the wife is not a ground of defense by a husband to a suit brought by the wife to recover permanent alimony, and it was not error to *369 so instruct the jury,” has no application here, for the reason that the ruling was made on the trial of the wife’s suit for permanent alimony, in which the husband was not seeking to annul the marriage, but in his answer sought a divorce on the ground of the wife’s impotency, the sole issues on the trial being the wife’s prayers for permanent alimony and for cancellation of certain deeds. As to the right of the wife to temporary alimony in the husband’s action for annulment of the marriage, on conflicting evidence as to the invalidity of the marriage, see Jones v. Jones, 200 Ga. 571 (37 S. E. 2d 711).
The trial judge did not abuse his discretion in granting temporary alimony and attorney’s fees to the wife.

Judgment affirmed.

All the Justices concur.